530

5308
SBA

1   **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2   Name   Sunday, Sr.     Roman

3         (Last)         (First)         (Initial)

    Prisoner Number   V-11338

4

    Institutional Address   P.O. BOX 4000

5

6           VACAVILLE, CA. 95696-4000

**FILED**

OCT 1 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7          **UNITED STATES DISTRICT COURT**
        **NORTHERN DISTRICT OF CALIFORNIA**

8   Roman Sunday, Sr.

9   (Enter the full name of plaintiff in this action.)       C 07   5308

10           vs.         )
             )  Case No. _____

11   D.K. SISTO, Warden   )  (To be provided by the clerk of court) **SBA**
             )

12   Defendant.     )  **PETITION FOR A WRIT**
             )  **OF HABEAS CORPUS**

13                  )
             )  **(PR)**

14   (Enter the full name of respondent(s) or jailor in this action)   )

15                  )

16            Read Comments Carefully Before Filling In

17   When and Where to File

18         You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23         If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS     - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10 A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11     1.  What sentence are you challenging in this petition?

12         (a)    Name and location of court that imposed sentence (for example; Alameda

13                County Superior Court, Oakland):

14         __Contra Costa County Superior Court, Martinez__

15                Court                              Location

16         (b)    Case number, if known __101480-2__

17         (c)    Date and terms of sentence __9/12/03   75years to life + 11__

18         (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                parole or probation, etc.)       Yes __XX__      No _____

20                Where?

21                Name of Institution: _____

22                Address: _____

23     2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24 more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25 challenging more than one sentence, you should file a different petition for each sentence.)

26   __Cal. Penal Codes: §187, §207(a), §205(b), §122022(a)(1),__

27   __§12021(a)(1), §667(a)(1),667(b)(1) & §1170.12__

28   _____

PET. FOR WRIT OF HAB. CORPUS          - 2 -

3. Did you have any of the following?

    Arraignment:                    Yes **XX**    No _____

    Preliminary Hearing:        Yes **XX**    No _____

    Motion to Suppress:        Yes **XX**    No _____

4. How did you plead?

    Guilty _____    Not Guilty **XX**    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury **XX**    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?          Yes _____    No **XX**

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment          Yes **XX**    No _____

    (b)    Preliminary hearing    Yes **XX**    No _____

    (c)    Time of plea          Yes _____    No _____

    (d)    Trial              Yes **XX**    No _____

    (e)    Sentencing         Yes **XX**    No _____

    (f)    Appeal            Yes **XX**    No _____

    (g)    Other post-conviction proceeding    Yes **XX**    No _____

8. Did you appeal your conviction?         Yes **XX**    No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal         Yes **XX**    No _____

        Year: 2005        Result: `Affirmed (A104520)`

        Supreme Court of California    Yes **XX**    No _____

        Year: 2005        Result: `Review denied (S135861)`

        Any other court         Yes _____    No _____

        Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS    - 3 -

petition?                                          Yes __XX__    No____

(c)    Was there an opinion?                       Yes __XX__    No____

(d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                                   Yes ____    No__XX__

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to
this conviction in any court, state or federal?                    Yes __XX__    No____

    [Note: If you previously filed a petition for a writ of habeas corpus in federal court that
challenged the same conviction you are challenging now and if that petition was denied or dismissed
with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit
for an order authorizing the district court to consider this petition.  You may not file a second or
subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28
U.S.C. §§ 2244(b).]

(a)    If you sought relief in any proceeding other than an appeal, answer the following

       questions for each proceeding.  Attach extra paper if you need more space.

I.    Name of Court: Contra Costa County Superior Court

    Type of Proceeding: "Motion for New Trial"

    Grounds raised (Be brief but specific):

    a. Trial Counsel's conflict of interest

    b._____

    c._____

    d._____

    Result: denied (RT 1721)          Date of Result: 9/12/03

II.   Name of Court: Contra Costa County Superior Court

    Type of Proceeding: Habeas Corpus Petition

    Grounds raised (Be brief but specific):

a. Newly acquired evidence/Miscarriage of Justice

b. Ineffective Assistance of trial Counsel

c.

d.

Result: Denied                    Date of Result: 12/21/06

III.    Name of Court: California Court of Appeals Div Five

Type of Proceeding: Writ of Habeas Corpus.

Grounds raised (Be brief but specific):

a. Newly acquired evidence/misscarriage of justice

b. Ineffective assistance of trial counsel.

c.

d.

Result: Denied                    Date of Result: 4/18/07

IV.    Name of Court: California Supreme Court

Type of Proceeding: Writ of Habeas Corpus

Grounds raised (Be brief but specific):

a. Newly acquired evidence/misscarriage of justice

b. Ineffective assistance of trial counsel.

c.

d.

Result:                    Date of Result:

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No X

Name and location of court:    None

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS        - 5 -

1  need more space.  Answer the same questions for each claim.

2  　　　　[Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:  Petitioner's conviction based on insufficient

6  evidence violates Due Process Clause U.S. Const. Amend.14

7  Supporting Facts:  Trial Counsel's motion to dismiss should have

8  been granted because the evidence presented at trial is

9  insufficient to corroborate the testimony of co-defendant

10  /witnesses.(RT 753; CT 422)

11  Claim Two:  Jury Instructional error violated petitioner's due

12  process and fair, jury trial rights U.S. Const. Amend 14,5,6.

13  Supporting Facts:  The trial Court gave the jury conflicting jury

14  instructions.  CALJIC 2.27 were given without including

15  the critical bracketed portions on corroboration.(RT 1104

16  CT 609, Ex.B Pg.23) Jury expressed confusion in deliberations.
   [continued on page 8)

17  Claim Three:  Trial Counsel's conflict of interest denied pet.

18  the effective assistance of counsel. U.S. Const. Amend.6

19  Supporting Facts:  Trial Counsel's conflict of interest hampered

20  the defense.  Trial Counsel previously represented

21  accomplice & key prosecution witness, Roman Sunday, Jr.

22  (Petitioner's son) on this same case.(RT 1356-1363, 1386)

23  (claim 3 continued on pg. 7)***ADDITIONAL CLAIMS PGS.8-14***
   If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  _____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS　　　　- 6 -

Ground 2 Jury Instructional Error Supporting Facts Continued:

The Jury asked:

"YOUR HONOR, I WOULD LIKE TO KNOW IF IT IS PERMISSIBLE TO
DETERMINE GUILT BASED ON THE TESTIMONY OF A COLLABORATOR
ALONE, comma, OR WHETHER OTHER CORROBORATING EVIDENCE IN
SUPPORT OF THAT TESTIMONY IS NECESSARY. period"

"IF OTHER CORROBORATING EVIDENCE IS NECESSARY CAN THAT EVIDENCE
BE THE TESTIMONY OF A SECOND COLLABORATOR?  Question mark.
ALTERNATIVELY, CAN I INTERPRET ANY EVIDENCE THAT TENDS TO
SUPPORT A PORTION OF THE TESTIMONY OF THE COLLABORATOR AS
SUFFICIENT TO BELIEVE ALL OF THE TESTIMONY OF A COLLABORATOR?
Question mark."(RT 1321)

Although the trial Judge responded by referring the jury to
the instruction
instruction numbers 3.11, 3.12, 3.13. 3.14, 3.16, 3.17, and 3.18

(RT 1322), he did not specifically advise the jury that the rule

discussed in CALJIC 2.27 did not apply to corroboration required

for accomplice testimony.  Therefore, it is unclear if the jury

applied the correct law on accomplice testimony, which made up

the bulk of the prosecution's case.


GRound 3: Trial Counsel's Conflict Supporting Facts Continued:

The attorney in question, William Daley, first worked on "Junior's"

(petitioner's son) case on about November 7, 2001, when he met

with him and his mother at Juvenile Hall, in the absence of

Junior's attorney Linda Fullerton.(RT 1386)  He did not tell

Fullerton of the meeting or that he would be meeting with her Client.

(RT 1387)

On November 7 , 2001, Daley sent a letter to petitioner which

noted that he had requested Daley also represent his son in the

pending homicide case.  Daley explained that he could not represent

"Junior" "if he was to testify at your trial, or his" but that "should

not be a problem.  Your case will go first, and he will not testify

with his own case pending." Daley added that "in negotiations in
your case, I would not be blaming the shooting on your son." Most
significantly, he wrote:  "Good practice suggests I now represent
both of you at the same time."(CT 829)  Petitioner signed the last
letter to acknowledge that he had read it.(Ibid.)  Daley claims the
word "not" was omitted from the last paragraph.(RT 1417)

Daley met with Junior at Juvenile Hall on three occasions.(RT 1398)
The next interview was a week of two before Junior's juvenile court
hearing on January 23, 2002. (RT 1435)  Daley said they did not talk
about the case.  At the second interview, they discussed the once
surrounding events but not the shooting.(RT 1428-30)  At the
third interview, Daley thought he would "get into the meat of
the case" when he got an answer to a crucial question and decided
He back off inquiring any further regarding the shooting when
Junior told him that petitioner drove the car.(RT 1435-36, 1440-
41)

During this same time period, Daley was meeting with
petitioner every week or every other week "and talking to him
about the case and Junior "a great deal."(RT 1444)

Between his first and second interviews with Junior, Daley
notified Junior's attorney, Fullerton, that he had been retained
to represent her client.(RT 1443-44)  After the third interview,
Daley received a call from the juvenile court that a hearing
had been scheduled regarding Junior's representation.(RT 1448)
At the hearing, Daley continued to request that he be allowed
to represent Junior.(CT 830-837)  Junior told the court he had
no problems with attorney Fullerton "but my mon has,' and his
dad wanted him to have the same atttorney.(RT 835)  The court

relieved Daley from representing Junior.(RT 1458)

Daley's conflict of interest hampered the defense.  Jeff Bradley, a Contra Costa County public defender since 1974 who had represented petitioner prior to Daley testified that Daley's conflict may have affected his ability to represent petitioner at trial because there seemed "to be no effort to discredit Junior at all."(RT 1626)  Bradley also noted that, if in testifying, Junior said something which contradicted what he had told Daley in the context of their attorney-client relationship, there would have been a clear conflict.(RT 1663) Therefore, Daley should not have tried to cross-examine Junior. (RT 1664)

Daley testified that, although he had performed an investigation on Shelton Eaves (RT 1486), he did not make an effort to investigate Junior.  He did not anticipate that Junior would testify until the day before, and did not try to obtain his school records or to find out if he had a prior juvenile record.(RT 1463-64)  Nor did Daley inform the trial court prior to Junior's testimony or at any time during the trial that he had previously represented Junior.(RT 1484)  The court knew nothing of Daley representation of Junior until the new trial motin was filed.(RT 1624)  However, Daley claimed nothing he had learned from Junior affected him in any way when he cross-examined him.(Rt 1494-99)

The trial court denied petitioner's motion for a new trial ruling that "if there was a foul, there was no harm to " petitioner.(RT 1720-21)

**Claim 4:** <u>Prosecutor misconduct violated petitioner's Due Process</u>
<u>rights as guaranteed by the U.S. Constitution 14th Amendment.</u>
Supporting facts:

The prosecutor committed misconduct that was not harmless
during trial and closing arguments as follows:

A. During trial the prosecutor, over the courts orders and trial
counsel's objections, repeatedly referred to inadmissible prior
crime evidence which prejudiced petitioner.  In limine, it was
decided that petitioner's prior convictions for robbery from
1971 or earlier would not be put before the jury.(RT 783)  Only
a violation of vehicle code section 10851 would be allowed,
only if petitioner testified.(RT 785)  However, during the
testimony of defense character witness Frank Kellom, the
prosecutor asked did he know petitioner had gone to prison for
a robbery where he stuck a gun in "someone's face",(RT 779-800)
Trial counsel objected and the court limited the prosecution's
questioning to the fact of a conviction, no details.(RT 800)
Regardless, the prosecutor repeatedly persisted in asking defense
character witnesses about the prejudicial, inadmissible details
of the prior robbery from 30 years ago, before petitioner changed
his life, over defense objections.(RT 802; 810)

B. During closing arguments, the prosecutor committed further
misconduct by using petitioner's past convictions improperly
in closing arguments to suggest petitioner lied to Dr. Lerchin
about his past.(RT 1262)

C. The prosecutor also committed misconduct by vouching for her accomplices witness based on his personal opinion.(RT 1177, 1200-1201)

D. The prosecutor committed further misconduct by misstating the law on heat of passion.(RT 1267)  Trial Counsel objected, but was overruled.(RT 1268)  Thereby, the prosecution continued with the argument that to be acting under a heat of passion you have to act immediately.  This misstates the law, since provocation sufficient to reduce murder to manslaughter can occur over a period of time.(RT 1245)  The prosecutor's misstatement of law was not harmless.  Evidence presented at trial showed evidence of provocation over a period of time from the Sunday's home repeatedly being broken into and the belief the victim was behind it.(RT 321, 325, 613-625, 661, 831-832)

Claim 5: Petitioner was denied his 6th Amendment Federal Constitutional right to the effective assistance of Counsel at trial.

Trial counsel's failure to make timely objections when the prosecutor asked petitioner's brother if he was aware of each of petitioner's prior convictions is prejudicial ineffective assistance of counsel.  Although a prosecutor may inquire of defense character witnesses whether they are aware of the petitioner's prior convictions or misconduct, the trial judge has the discretion, under Evidence Code section 352, to exclude prior convictions and misconduct.  Trial counsel did not ask the court to exercise its discretion even though the court was

willing to limit the prosecutor to only one conviction for impeachment purposes and there is no reason to believe he would not have done the same with regard to character witnesses.  In fact, the court specifically stated that the single conviction would be admissible if petitioner testified but "I'm not going to allow it otherwise."(RT 785)  Therefore, Trial Counsel failure to object to evidence of petitioner's prior convictions (RT 799-802, 806-808, 810) in a timely fashion prejudiced petitioner.

Claim 6:  The cumulative effect of all the errors so infected the trial with unfairness as to violate the Due Process Clause of the United States Constitution 14th Amendment.

The cumulative effect of all the error denied petitioner a fair trial and resulted in a miscarriage of justice.

Claim 7:  Newly discovered evidence proves petitioner's conviction is a miscarriage of Justice in violation of U.S. Const. Amend. 14th

Before and during the time of petitioner's trial, July 16 to August 13, 2002, his mental health records relevant to his defense were misplaced and weren't located until December 20, 2004.(See Exhibit A [Letter from Dr. Hare] pg 19 ; RT 956-957, 981-982, 984, 988, 999)

The now acquired mental health records would have undermined the prosecution case.  The prosecution's case was based on petitioner's son and his friend Shelton Eaves, who both made several inconsistent statements, (RT 335-336, 353, 671-673 & RT 337, 342, 359, 693, 695, 702-703, 849-850, 869-875, 886) and took deals that would bring

home by the time they turned 25 years old.(RT 320, 680-685)  Although both teenagers implicated petitioner as being present during parts of there kidnapping and murder of Blair Moore, substantial evidence supported that petitioner was unaware of what the teenagers were up to, until it was too late.(RT 323-339, 348, 350, 352-353, 372-375) Furthermore, the defense presented evidence of petitioner's mental disorder, which made it unlikely that he would actually have formed the requisite criminal intent necessary to prove he aided and abetted in the murder and kidnapping.(RT 959-963, 967-968, 990, 998)

The prosecution used evidence that petitioner **exaggerated his symptoms** to get worker's compensation, therefore his mental disorder evidence was discredited.(RT 974, 1261-1264)  However, according to the newly acquired records, petitioner actually **minimized his symptoms.**(See Exhibit A page 21 )  Moreover, the defense was incomplete without these records.  Dr. Lerchin testified for the defense that although he formed an opinion that petitioner suffered from major depressive disorder and PTSD, his ability to form an complete opinion was hampered by the unavailability of the missing records. (RT 956, 981-982)  Therefore, had Dr.Lerchin and the defense had those mental health records before trial, the prosecution's case would have been undermine and the defense would have been complete. Thereby, it could have been proven that petitioner's is not guilty because his mental health disorder made it unlikely he acted with the required criminal or general intent in any minimal aid he gave.


Claim 8: Trial Counsel ineffective assistance violated petitioner's 6th Amendment right under the United States Constitution.

Petitioner's imprisonment is unlawful because he was denied the effective assistance of counsel. Trial counsel was ineffective in that he failed to object to the prosecution's use of gruesome photographic evidence of the disfiguring results of a shotgun blast to the back of a 12 year old boy's head.(RT 275, 736, People trial exhibit #17), and the prosecution's further inflammatory comments during closing arguments, in which he stated: "...do not lose sight of who the victim was here.  THIS LITTLE BOY, SEEN RIGHT HERE, SHOULD BE ALIVE, SHOULD BE HERE TODAY."(RT 1268 lines 23-26)  These unchecked prosecutor actions appealed to the jury's passions and prejudices, thereby prejudiced the defense.

The gruesome photographic evidence was more prejudicial then probative, therefore the trial court may have used its discretion to exclude them if trial counsel had objected.  It was undisputed that the  deceased was punched (RT 326, 662-664) and later on, shot in the back of his head.(RT 261-270, 271, 274, 337, 359. 671-673) Therefore, further evidence, although relevant, was cumulative and more prejudicial then probative.

Furthermore, the prosecution's appeals to the jury for sympathy for the victim were irrelevant to the issue at trial and a form of misconduct.  Therefore, had trial counsel objected, the jury would have been admonished to disregard the appeal to passion and prejudice and remain impartial.

Thereby, trial counsel's failures to object denied petitioner a fair and impartial jury and a meritorious defense.

It is reasonably likely the jury would have reached a more favorable verdict had trial counsel made the forementioned objects because the pictures may have been excluded and the jury admonished to remain impartial.  Moreover, this was a close case and the evidence of guilt was not overwhelming.  The jury deliberated for several days asking for several readbacks of testimony and clarification of jury instructions on co-defendant corroboration.(RT 1283, 1321, CT 431-435)  The only substantial evidence presented came from the actual kidnappers and killer Roman Sunday, Jr. (petitioner's son) and Shelton Eaves (RT 335-336, 353, 671-673), who made several blame shifting inconsistent statements (RT 337, 342, 359, 693, 695, 702-703, 849-851, 869-875, 886) and testified for the prosecution, in exchange for deals that would bring them home at 25 years of age.(RT 320, 680-685)  Even if the prosecution's evidence is believed, petitioner's role was minimal and he suffers from a mental disorder that makes it unlikely he acted require criminal or general intent.(RT 955-963, 990, 998)

1       List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3   of these cases:

4   Jackson v Virginia 443 US 307; Estelle v McGuire 502 US 62;

5   People v Stewart 145 Cal.App.3d 975; Lockhart v Terhune 250

6   F.3d 1223; US v Young 470 US 1; Crotts v Smith 73 F.3d 861

7   Do you have an attorney for this petition?                Yes_____      No_XX_

8   If you do, give the name and address of your attorney:

9   _____

10      WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on _____10-11,07_____          _Roman Sunday Sr._

14                Date                      Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS            -16-

## VERIFICATION

(C.C.P. §§446; 2015.5;
28 U.S.C. §1746)

I, ROMAN SUNDAY SR._____, declare under the penalty of perjury that:

I am the PETITIONER_____ in the attached matter; I have read the foregoing document(s) and know the contents thereof; and the same is true of my own personal knowledge, or upon information and belief therein that they are true; that if called to testify as to the contents hereof I could do so competently as a sworn witness.

Executed this _10_ day of _Oct._____,2007___, at California State Prison /Solano, Vacaville, California.

(Signature) _Roman Sunday Sr._
Declarant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DECLARATION OF SERVICE BY MAIL

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, RAYMOND SHERMAN SR._____, declare:    That I am a resident of California State Prison / Solano      State of California; I am over the age of 18 years; XXXam/am not a party to the above entitled action; My address is P.O. Box 4000 _1-107_, Vacaville, CA 95696.    I served the attached document(s) entitled: PETITION FOR A WRIT OF HABEAS CORPUS, PLUS TWO (2) COPIES TO THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA.

on the persons/parties specified below by placing a true and duplicated copy of said documents into a sealed envelope with appropriate First Class Postage affixed thereto and prepaid, and placing said envelope(s) into the United States Mail in a deposit box provided at the California State Prison / Solano, in Vacaville, California, addressed as follows:

TO:
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
450 GOLDEN GATE AVE.
P.O. BOX 36060
SAN FRANCISCO, CA. 94102

There is First Class mail delivery service by United States Mail at the places so addressed and/or regular communication by mail between the place of mailing and the addresses above. I declare under the penalty of perjury that the foregoing is true and correct and that I executed this service on this _____ day of _____, _____ at California State Prison / Solano, in Vacaville, California.

(Signature) _Ralph Sherman Sr._
Declarant

Exhibit A.

Dr. Hare's Letter on missing Medical Records

**NATHAN HARE, Ph.D., Ph.D.**

*Clinical Psychologist Lic.# P.SY5202*

Cathedral Hill Professional Building — 1801 Bush Street, Suite 118, San Francisco, CA 94109

Ph. D., Psychology
Ph. D., Sociology

Telephone: (415) 929-0204
Fax: (415) 929-1677
e-mail: nhare@blackthinktank.com

December 20, 2004

Workers Compensation Appeals Board\
30 Van Ness Ave #3100
San Francisco, CA 94102
C/O Frank Kellom
Roman Sunday

Re:   Roman Sunday
      WCAB Case Number SFO 431295/425119
      Claim Nos.: 98-0331; 99-0831
      *WCAB Roman Sunday v. CCSF*

This is an update and indication of location of records, which had inadvertently been misplaced in storage.  I had looked for them mightily and repeatedly and incredibly found them only late Saturday afternoon, December 20, 2004.  I now have in my possession records indicating that this patient entered treatment here for a work-related injury on 02/22/1999, for a DOI of 02/17/1999, when he was attacked an injured when a passenger attacked him and slammed the door on h is hand and finger. His knee also was hurt, the same leg he was shot in in 1994,  and when he entered treatment here he was complaining of excruciating pain, difficulty sleeping and concentrating. He had intrusive thoughts. He felt frustrated and angry and seemed to him like everything he did would turn out wrong.  He had trouble eating. He had fear of loss of impulse control.  He suffered acute anxiety and couldn't think clearly.  He had been referred by San Francisco General Hospital to  Kaiser, where he was examined and treated by Dr. Dominique Tse, M.D., orthopedic surgeon, for his hand  on the day of the injury, and had an appointment with Kaiser doctors for follow-up therapy.  He was prescribed pain medication.  He had called here on the day of injury to try to get an appointment.

His psychological trauma was such that he was rescheduled to return here for therapy in three days.  There are notes chronicling his symptoms of reactive depression and anxiety in March.  On his last visit in May 19, 2000, he spoke of continuing anxiety, apprehensiveness and fear of getting attacked. He was beginning to feel "paranoid" and dreaming of persons in white sheets attacking him while driving the bus intent on lynching him.  "Sometimes they're black but most of the time they're white. He was still having trouble sleeping and eating,. He had lost ten or eleven pounds since the date of injury. He was very depressed.  He was continuing to have nightmares.

Re:    Roman Sunday
       WCAB Case Number SFO 431295/425119
       DoI: 10/9/97 and 2/17/99
       Page 2


There is an "Incident Report Narrative" from the San Francisco Police Department, which seems to confirm in detail the patient's subjective report.

There are a number of administrative police, workers compensation (Firm Solutions) reports, and Muni reports, including grievance reports by the patient, and a request or notification to Firm Solutions, under the provisions of Labor Code Section 4600, naming me as his primary treating provider.

There is an itemized psychiatric intake summary of symptoms, diagnosis, also noting medications for physical pains, including Ibuprofen, 600 mg., propoxphene, Naproxem 500 mg., by Dr. Tse, M.D.  Several prescription and treatment records or certificates are on file from Dr. Tse.

The intake report lists psychiatric treatment goals were set to include:
       Reduce distressing cognitions
       Improve concentration
       Reduce hyper-vigilance.
       Reduce intrusive memories of traumatic event.
       Reduce situation bound avoidance.
       Learn to be comfortable with thoughts associated with trauma.
       Reduce over-generalization of traumatic stimuli.
       Reduce depressive cognitions.
       Improve quality of sleep patterns
       Improve mood stability
       Increase attention span
       Increase positive moods.
       Return to pre-morbid level of psychosocial functioning.

There is a "Doctor's First Report of Occupational Injury or Illness" which I completed on March 5, 1999.

It presents a diagnosis of Posttraumatic Stress Disorder (DSMIV-309.81), with reactive depression, r. o. Major Depressive Disorder.  Symptoms included hyper-vigilance, easy startle, sleeplessness, intrusive thoughts, difficulty focusing, disdain for usual activities, depression, tension, low threshold of tolerance for stress and ambiguity, social withdrawal, somatic concerns, anger, feelings of victimization, apprehensiveness, dismay, despondency and chronic worry for future, including loss of occupation.  It was presented to Workers comp carrier Firm Solutions, Attn: Monique Dias, claims examiner.

Re:    Roman Sunday
          WCAB Case Number SFO 431295/425119
          DoI: 10/9/97 and 2/17/99
          Page 3

There are other medical reports regarding his physical injury from the California Pacific Medical Center and attesting to his physical incapacity related to his physical injuries.

There is a report of an update of the patient's condition to Claims Examiner, Monique Dias, Firm Solutions, dated 04//21/99, with an estimated return to work date of 6/30/99.

There is a disability report from Dr Dominic Tse, M.D, dated 5-13-99.

## PSYCHOLOGICAL TESTING

There is an MMPI-2 profile of testing done here on 5 20 1999, on which Mr. Sunday produced a valid profile. Despite his tendency to minimize his symptoms, he produced T-scores above 65 on two scales, Hs (68) and Hy 76), suggesting a psycho-physiologic related anxiety disorder, which may have been affected by his experience of chronic pain from his physical injuries, and also "may have been due to appropriate situational dissatisfaction or an adjustment to chronic depression and worry, according to a computerized analysis of his profile.

In addition to materials in the file for the Date of Injury of 2/17/99, there are also papers from Firm Solutions regarding the Date of Injury of 10/9/97.

## IMPRESSION/RATING

Review of medical records and history, including previous work related injuries of the early 1990s, and clinical impressions of his visits here in 1999 confirm my clinical observation that this patient continued to suffer permanent residuals on his visit here of 5/19/2000. It appeared that this patient's psychiatric symptomatology, including psychological/somatoform reactions would merit an apportionment of 80 to 90 per cent for psychiatric causes related to his industrial injury, with a rating of his psyche at 53 per cent after apportionment to non-industrial causes.

Sincerely,


Nathan Hare, Ph.D., Ph.D.
Licensed psychologist, clinical
#PSY5202

NH: ra

# NATHAN HARE, Ph. D.

*Clinical Psychologist*

Cathedral Hill Medical Center Building        1801 Bush Street        San Francisco, CA 94109

Hours by appointment only                                        Telephone   (415) 929-0204

October 02, 1992

Attn: Ron Kelsey
Employees' Retirement System
City and County of San Francisco
1155 Market Street, 3rd floor
San Francisco, California 94103-1523

Refernce:   Roman Sunday
            Claim #910004

Dear Mr. Kelsey:

This is to indicate that Roman Sunday has shown considerable progress.  However, he does not appear to be yet up to full capacity.  I suggest some kind of limited or light duty, to start, and monitor his progress.  With such an approach, he may be able to adapt in a period of months to his usual and regular duties.

Please contact me if there are further questions.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#PSY5202

NH:ra

# ATTENDING PHYSICIAN'S SUPPLEMENTARY STATEMENT

## PART III

PLEASE RETURN TO:
CUNA Mutual Insurance Group
Attn: MemberElect® Credit Claims
P.O. Box 2063, Pomona, CA 91769

Full Name and Address of Patient:

Roman Sunday

240 North Bayshore Blvd.

San Mateo Ca 9440

Patient Phone Number: ac415 -348 -2236

| Patient Birthdate: | MONTH | DAY | YEAR |
|---|---|---|---|

Patient ID Number: 8619

1. Nature of Sickness or Injury: Anxiety disorder Affecting Physical Condition NOS (DSMIII-R 300.00). Psychological

2. Describe complications if any.

If due to pregnancy, please answer the following:

A. Describe complications: ___

B. Onset of complications. Date: ___

C. Date of delivery: ___

3. Date complications ceased: ___

Type of delivery: ___

4. Date you first treated patient for this condition. Date: 08-04-92; 08-11; 08-22; 08-29-92

Gives dates of most recent treatments.

A. Date of next appointment. Office 08-04-92; 08-11; 08-22; 08-29-92

B. Will patient be disabled thru this date? Hospital: ___

5. Is patient still under your care for this condition?

X YES ___ NO

If discharged, give date ___ Date: ___

If referred to another physician, give date and name. Date: ___

Name: ___

6. What medical limitations were placed on his/her occupational and daily activities?

total disability

7. Exact date disability began: ___

A. Exact date patient released to return to work: Date: 07-02-91

B. If patient returned to work, was it light duty? ___ YES ___ NO If "yes," list restrictions: ___

8. Prognosis/Remarks:

indefinite; permanent and stationary

Date: 08-29 19 92

AC (415) 929-0204

(Telephone Number)

1801 Bush St., #118.

(Street Address)

San Francisco, Calif. 94109

(City or Town)    (State)    (Zip Code)

Physician's Name (PRINT) Nathan Hare, Ph.D., #PSY5,202

Signature _____ (Attending Physician)

732 CD-2B (R4-90)

# SUPPLEMENTAL CREDIT DISABILITY CLAIM REPORT

**CUNA MUTUAL INSURANCE SOCIETY**
P.O. BOX 2063, POMONA, CA 91769
PHONE 714/627-2644

CLAIM

CERT. NO.              CONTRACT NO.

THRU

DISABILITY BENEFIT PERIOD

## PART 1

1. **WAIT** at least **30 DAYS** from the paid thru date shown before completing this form.
2. Answer all questions in PART II below, date and sign the form.
3. Have the Attending Physician complete PART III on the reverse side of this form.
4. Return the completed Supplemental Claim Form in the enclosed envelope.

| DATE PAID | AMOUNT PAID |
| --- | --- |
|  |  |

## PART II

**MEMBER COMPLETE THIS SECTION**

1. Date you last worked: (Mo.) _7_ (Day) _1_ (Yr.) _91_ . Date disability began: _7-4-91_
2. Are you still disabled? (YES) / NO
   Date you plan to return to work: _NONE_
   Date you returned to fulltime work: _NONE_
   Date you returned to light work: _NONE_
3. What prevents your returning to work? _Pain Physical, Left Shoulder_
   _Neck and left lower shoulder_ _Left Physical Mental_ _NONE_
4. Please list all dates you have worked at any job since the beginning of your disability. _NONE_
   (Please circle all dates that were part time work.)
5. Are you enrolled in vocational rehabilitation or school? _____ YES _____ (NO)
   - If yes, describe program and give date started and date of completion. _____

---

**NOTICE:** Any person who knowingly and with intent to injure, defraud or deceive any insurance company submits a statement of claim containing any false, incomplete or misleading information is guilty of a crime. (In New Jersey, subject to criminal and civil penalties. In Florida, felony of the third degree.)

I authorize my doctor to release Medical Information about my disability to CUNA Mutual Insurance Society for the purpose of insurance benefits. This authorization shall remain valid until my claim ends. I understand that I and my doctor may keep a copy for our records.

_Norma Sunday_ _____ ( 45348 )_8-2328_ _8-29-92_
Signature of Member        Area Code — Telephone    Date

**THIS IS YOUR CLAIM FORM. YOU AND YOUR DOCTOR MUST COMPLETE THIS FORM TO RECEIVE ADDITIONAL BENEFITS.**

CERTIFICATE OF RELEASE

As required by the provisions of Penal Code section 851.6 (as amended by Stats. 1975, ch. 1117), I hereby

certify that the taking into custody of _Roman Salgado_ on _09/08/92_
SUBJECT'S NAME                                    DATE

by the ___SFPD_____ was a detention only, not an arrest.
NAME OF AGENCY TAKING CUSTODY

_Roman Salgado_____ was released on _09/08/92_
SUBJECT'S NAME                                    DATE

by the ___SFPD_____ pursuant to the provisions of:
NAME OF RELEASING AGENCY

Paragraph (1) of subdivision (b) of Penal Code section 849; paragraph (3) of subdivision (b)
of Penal Code section 849; Penal Code section 849.5; and Penal Code section 851.6,
pertinent portions of which appear on the reverse of this certificate.

Signed _____                    ☑RELEASING OFFICER ☐SUPERIOR
                                          Title _P-0_

Original copy to Citizen. Copy to be filed at BCI. Integrate with statistical copy of Misdemeanor Adult Cite.

SFPD 184 (02/82)

# NATHAN HARE, Ph. D.
## *Clinical Psychologist*

Cathedral Hill Medical Center Building — 1801 Bush Street, Suite 118 S.F., CA 94109

Hours by Appointment Only

Telephone/Fax: (415) 929-0204

08-06-94

Ed Jones/Kathy Gilbert
MUNI
949 Presidio Ave
San Francisco,California 94115

RE: Roman Sunday
    Cap #2187

This is to verify that Roman Sunday has been in treatment here in recent years and was off-work for some months in 1993, at which time he was diagnosed Anxiet Disorder NOS (DSMIII-R-300.00, with Psychological Factors Affecting Physical Condition (316.00). He would occasionally miss his appointments then drop by to wait until I might work him in if possible on an urgency. He was receiving treatment for his physical injury, including neck and back injuries, by Drs. Oscar Jackson,M.D.,  T. Banks, Ernest Bates among others,and has been on a variety of medications.

Mr. Sunday returned to work on 01-14-94. In July, he entered the Employee Assistance Program for alcohol abuse and family problems.  When he was experiencing panic attacks from early May to the end of July, he visited this facility on a number of occasions, the most recent being July 25th and August 2nd.

Roman Sunday has experienced repeated assaults while driving the bus in recent years, resulting in severe psychological residuals as well as significant phsycial damage by medical records and history. He experiences periodic bouts of anxiety, including panic attacks and symptoms of post-traumatic stress, forgetfulness and psychological sequelae to chronic pain. It is my clinical judgment, by clinical observation and mental status examination that his periodic inability to function and focus clearly would be consistent with his diagnosis. It is recommended that he resume the psychotherapy shortcircuited upon his return to work about a year ago.

Please contact me if you have further questions.

Sincerely,

Nathan Hare, Ph.D
Licensed psychologist, clinical
#PSY5202

NOTE TO FILE:

RE:     Employee:  Roman Sunday
        Employer:  MUNI/CCSF
        SFO Case Number: 431296/425119

August 14, 2001

Roman Sunday was a patient here intermittently over a period of years.  I took
his file out for copying but have been unable to locate it now.  Unfortunately, I will
be traveling in the next two weeks but will return for autumn cleaning of office
and storage and will continue to look for it in the process.

The attached sheet, found in an office computer application database, shows
notes entered during a visit made by this patient on May 19, 2000

Sincerely,

Nathan Hare, Ph.D., Ph.D.
Licensed psychologist, clinical

Roman Sunday
3420 Barrett AVenue
Richmond CA 94805
Home Phone: (510) 233-6322  Work Phone:

5/19/00 -

A lot of fear.  Afraid going to get attacked.  Paranoid. XI think something's going to happen.  X all the time, maybe I
shouldj't feel that way but that's how I feel. I don't trust nobody. Can't sleep, Can't hardly eat.  X lost ten or eleven
pounds since the incident.  Very depressed.  Attitude is different. No tolerance.no patience. I snap a lot. X at people.
Not having no sex or nothing like that.  X Since the incident.  Since the assault. Have a lot of dreams and
nightmares.X about the assault and everytime I be at work, or drving the bus I feel somebody might attack me in
white sheets.  Klan or something be coming at me like they're going to lynch me. Sometimes they're black  but most
the time white, just people with sheets on.

**WESTCOAST LEGAL SERVICE**

41 North First St., San Jose, Ca 95113  (408) 292-8128 or (800) 698-8177  FAX (408) 292-4145

# REMINDER

May 10, 2001

Nathan Hare, PhD
Attn:
1801 Bush St #127
San Francisco, CA  94109

FAX:

DUE DATE: 02/01/01
WLS #: 98C71485-01

CASE: Roman Sunday
v  CCSF
ACTION: SFO 431296/425119

RECORDS ON: Roman Sunday
REQUESTOR: Nancy Tavernit
San Francisco City Atty

Dear Custodian of Records:

Our records show that a SUBPENA for records was served on your office in the above case. To date, we have not received a response from your office.

It is very important that we hear from you regarding this subpena. Failure to fully comply with this subpena may result in a court fine of $500.00. If you have questions regarding our subpena, please call our office at the number below, otherwise, please send your records to our office today.

WESTCOAST LEGAL SERVICE
P.O. Box 2286
San Jose, Ca 95109

PHONE: (408) 292-8128 or (800) 698-8177

If necessary, we can copy your records at your office. Please call our office to make arrangements.

Thank you for your cooperation in this matter.

*Connie Heal x 522*

Records Division
WESTCOAST LEGAL SERVICE

CC: Nancy Tavernit
San Francisco City Atty

75/98C7148501

# WESTCOAST LEGAL SERVICE
## RECORDS READY FAX FORM

WLS# 98C71485-01

## FAXING INSTRUCTIONS

1. PREPARE ALL RECORDS FOR COPYING, (refer to the attached instructions for a description of the types of records you are to produce and include BILLS & X-RAY films when indicated).

2. COMPLETE AND SIGN THE ATTACHED CERTIFICATE IN THE APPROPRIATE AREAS.

3. COMPLETE THE "RECORDS READY" SECTION BELOW AND FAX IT TO

### 1-800-698-5877

| | | |
|---|---|---|
| **RECORDS PERTAIN TO** | : | **Roman Sunday** |
| **DATE OF BIRTH** | : | **02/22/1945** |
| **PATIENT ID.** | : | **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** |
| **WLS FILE #** | : | **98C71485-01** |

 

## RECORDS READY

**PLEASE CHECK THE APPROPRIATE BOXES BELOW.**

☐ **ALL** of the requested records are ready to be copied.     ☐ **BILLS** included     ☐ **XRAYS** included

☐ **SOME** of the requested records are ready to be copied.     ☐ **BILLS NOT** included     ☐ **XRAYS NOT** included
(Please list the records that are **NOT** ready to be copied, below)

**APPROXIMATELY HOW MANY PAGES ARE TO BE COPIED?**

☑ 01 - 50 pages          ☐ 50 - 200 pages          ☐ 200 - 500 pages          ☐ 500 + pages
(1/4 inch thick or less)      (1/4 to 1 inch thick)      (1 to 2 inches thick)      (over 2 inches thick)

**WHAT ARE YOUR COPY HOURS?** (Please check days and fill in the times for copying.)

| ☐ | to | ☐ | to | ☐ | to | ☐ | to | ☐ | to | ☐ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Monday | | Tuesday | | Wednesday | | Thursday | | Friday | | Weekend |

**CONTACT PERSON AT YOUR OFFICE TO SEE FOR COPYING:**

_____     _____     _____
(Print Name)                            (Phone)                            (Fax)

**PLEASE CONFIRM THE ADDRESS WHERE RECORDS ARE TO BE COPIED**

Nathan Hare, PhD

1801 Bush St #118
San Francisco, CA  94109

Address correction requested:

 

38C71485-01

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF WORKERS' COMPENSATION

## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Roman Sunday<br><br>             Claimant/Applicant,<br><br>  vs.<br><br><br>CCSF<br><br>Employer/Insurance Carrier/Defendant. | CASE NO.    SFO 431296/425119<br><br>(IF APPLICATION HAS BEEN FILED, CASE NUMBER<br>MUST BE INDICATED REGARDLESS OF DATE OF INJURY.)<br><br>SUBPOENA DUCES TECUM<br><br>(When records are mailed, identify them by using the<br>above case number or attaching a copy of subpoena)<br><br>Where no application has been filed for injuries on or after<br>January 1, 1990 and before January 1, 1994, subpoena will be<br>valid without a case number, but subpoena must be served on<br>claimant and employer and/or insurance carrier.<br><br>See instructions below.* |

*The People of the State of California Send Greetings to:*   Nathan Hare, PhD

WE COMMAND YOU to appear before   __WestCoast Legal Service__

at  __41 N First St, San Jose, CA 95113__

on the __N/A__ day of ____FORTHWITH (10 DAYS)__, 19 _00_, at __10:00__ o'clock __A__ M. to testify in the above-entitle matter and to bring with you and produce the following described documents, papers, books and records:
Any and all medical records pertaining to Roman Sunday, DOB: 02/22/1945, SS#: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
RECORDS PERTAIN TO: Roman Sunday DOB: 02/22/1945 SS#: 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

(Do not produce X-rays unless specifically mentioned above.)

For failure to attend as required you may be deamed guilty of a contempt and liable to pay to the parties aggrieved all losses and damages sustained thereby and forfeit one hundred dollars in addition thereto.

This subpoena is issued at the request of the person making the declaration on the reverse hereof, or on the copy which is served herewith.

Date _____, 19 _____

            May 10, 2001

WORKERS' COMPENSATION APPEALS BOARD
OF THE STATE OF CALIFORNIA

_Secretary, Assistant Secretary, Worker's Compensation Judge_



**\*FOR INJURIES OCCURING ON OR AFTER JANUARY 1, 1990
AND BEFORE JANUARY 1, 1994:**

If no Application for Adjudication of Claim has been filed, a declaration under penalty of perjury that the Employee's Claim for Workers' Compensation Benefits (Form DWC-1) has been filed pursuant to Labor Code Section 5401 must be executed properly.

**SEE REVERSE SIDE
[SUBPOENA INVALID WITHOUT DECLARATION]**

You may fully comply with this subpoena by mailing the records described (or authenticated copies, Evid. Code 1561) to the person and place stated above within ten (10) days of the date of service of this subpoena.

This subpoena does not apply to any member of the Highway Patrol, Sheriff's Office or city Police Department unless accompanied by notice from this Board that deposit of the witness fee has been made in accordance with Government Code 68097.2, et seq.

DIA WCAB 32 (Side 1)(Rev. 06/94)

Case No. ___SFO 431296/425119___

STATE OF CALIFORNIA, County of _____

The undersigned states:

That he/she is (one of) the attorney(s) of record/representative(s) for the applicant/defendant in the action captioned on the reverse hereof. That ___Nathan Hare, PhD, 1801 Bush St #127, San Francisco, CA 94109___ has in his/her possession or under his/her control the documents described on the reverse hereof. That said documents are material to the issues involved in the case for the following reasons:

To ascertain the nature and extent of injury, duration of disability, need for future medical care, earnings and earning capacity and need for vocational rehabilitation under Labor Code 129.5.

### Declaration for Injuries on or After January 1, 1990 and Before January 1, 1994

☒ That an Employee's Claim for Workers' Compensation Benefits (DWC Form 1) has been filed in accordance with Labor Code Section 5401 by the alleged injured worker whose records are sought, or if the worker is deceased, by the dependent(s) of the decedent, and that a true copy of the form filed is attached hereto. (Check box if applicable and part of declaration below. *See instructions of front of subpoena.*)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___May 10___, 20_2001_, at ___San Jose___, California.

| /s/ Nancy Tavernit | **San Francisco City Attorney** 1390 Market St #250 | Phone: (408) 292-8128 Fax: (408) 292-4145 |
|---|---|---|
| Signature | Address | Telephone |

## DECLARATION OF SERVICE

STATE OF CALIFORNIA, County of _____

I, the undersigned, state that I served the foregoing subpoena by showing the original and delivering a true copy thereof, together with a copy of the Declaration in support thereof, to each of the following named persons, personally, at the date and place set forth opposite each name.

Name of Person Served            Date          Place

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 20____, at _____, California.

DIA WCAB 32 (Side 2)(Rev. 06/94)

Signature

98C71485-01

## PROOF OF SERVICE BY MAIL

I am employed in the State of California, County of Santa Clara. I am over the age of eighteen (18) years and not a party to the within action(s). My business address is 41 North First St., San Jose, Ca 95113.

On 01/22/01       I served this DEPOSITION SUBPENA and NOTICE OF TAKING DEPOSITION on the attorneys for all parties appearing in this action, by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Jose, California, addressed as follows:

William A Healy
P.O. Box 27097
San Francisco, CA  94127

I declare under penalty of perjury that the foregoing is true and correct. Executed on 01/22/01       at San Jose, California.

SIGNED    Connie Heal
WESTCOAST LEGAL SERVICE

761/98C7148501

36978134/36990775                                                    98C71485-01

| ATTORNEY OF RECORD | |
|---|---|
| San Francisco City Attorney<br>1390 Market St #250<br>San Francisco, CA 94102 | Case Number<br><br>SFO 431296/425119 |
| Workers Comp Appeals Board<br>30 Van Ness Ave #3100<br>San Francisco CA 94102 | **NOTICE OF TAKING<br>DEPOSITION (RECORDS ONLY)** |
| PLAINTIFF: **Roman Sunday** | |
| DEFENDANT: **CCSF** | |

To whom it may concern with respect to the Custodian(s) of Records for:

Nathan Hare, PhD

1.  PLEASE TAKE NOTICE that the deposition of said Custodian(s) of Records is scheduled as follows.

> DATE: 02/01/01                    TIME: 10:00 am
> ADDRESS:  WESTCOAST LEGAL SERVICE
>              41 North First St., San Jose, Ca 95113
>              (408) 292-8128 or (800) 698-8177

2.  PLEASE ALSO NOTE that no personal appearance will be made. True, legible, and durable copies of all documents described in the DEPOSITION SUBPENA which are certified by the above named Custodian(s) and which are delivered by mail or otherwise to the duly authorized deposition officer at the place at or before the date herinabove shown will be accepted as sufficient compliance by said Custodian. Said deposition to continue from day to day until completed

DATED:   January 22, 2001              /S/ Nancy Tavernit
                                    _____
                                       Nancy Tavernit

NOTICE OF TAKING DEPOSITION (RECORDS ONLY)

760/98C7148501

36978134/36990775

98C71485-01

ATTORNEY OF RECORD

| | |
|---|---|
| San Francisco City Attorney<br>1390 Market St #250<br>San Francisco, CA 94102 | Case Number<br>SFO 431296/425119 |
| Workers Comp Appeals Board<br>30 Van Ness Ave #3100<br>San Francisco CA 94102 | **DECLARATION<br>OF CUSTODIAN OF RECORDS** |

PLAINTIFF:    Roman Sunday

DEFENDANT:    CCSF

DEPONENT:        Nathan Hare, PhD
RECORDS REGARD: Roman Sunday
DEPOSITION DATE: 02/01/01

I, the undersigned, being the duly authorized Custodian of Records or other qualified witness, and having the authority to certify the records declare the following: the records were prepared in the ordinary course of business at or near the time of the act, condition or event, and that:

## CERTIFICATION OF RECORDS COPIED

☐ All of the records called for in the subpena or written release are in my custody and have been copied by this Deponent. A true and legible copy of said records are submitted herein.

or

☐ All of the records called for in the subpena or written release are in my custody and have been released to a WESTCOAST LEGAL SERVICE representative for the purpose of copying.

**BILLING RECORDS (if requested)**
☐ Billing records are produced herein.
  ☐ We do not have billing records as requested.

**X-RAYS (if requested)**
☐ X-Rays and/or other films are produced herein.
  ☐ We do not have x-rays or films as requested.

**PATHOLOGY (if requested)**
☐ Pathology materials are produced herein.
  ☐ We do not have pathology materials requested.

## CERTIFICATION OF NO RECORDS

☐ A thorough search of our files has been carried out under my direction. Based on the information provided for identification, no documents, records or other materials called for in the subpena or written release exist in our files.

**SELECT REASON**
☐ All records for the time period in question have been destroyed pursuant to our document retention policy.

☐ Records do exist, but none within the time period called for in the subpena or written release.

☐ A complete and thorough search has been conducted and no such records were found.
☐ Other: _____

_____
(if more space is needed, please attach additional sheet.)

I declare under the penalty of purjury that the foregoing is true and correct.

Executed on (date): _____    at (city,state): _____

Print Name: _____    Signature: _____

---

### DECLARATION OF PROFESSIONAL PHOTOCOPIER  (BPC Section 22462)

I declare that I am the attorney's representative and that I made true copies of all the original records delivered to me by the Custodian of Records of the within named location, and these records will be distributed to the authorized persons or entities.

Executed on _____    at _____ ,CA.   Signature: _____

WESTCOAST LEGAL SERVICE

## DECLARATION OF CUSTODIAN OF RECORDS

1/98C7148501

Walked into pocket to move the wall, Halloween day about one o'clock. came down and hit me on the right side of my head. Fell down, almost on topo f one of my employees. Stayed down awhile. scared to death. Couldn't believe had happened again. Very scared. Worried. I was shocked. Haolloween, something crawling on top of my head. Same thing in 1997. I was crying and hollering "When y'all go'n fix the walls. ya'll gon' wait till somebody die. When ya'll go'n fix the wall. I was out of it. I finally got up and got on the chair and went to the nurses and she wanted me to fill out some papers, but I couldn't. I just sat down and tried to get my head back together. She gave me an icepack to put on my head. it was swollen on the right side o f my head. I stayed down there about fifteen minutes, then went to seemy own doctor, Grimes. X(same day). Reinjured my neck from the first accident, my lower back, and here I am back off work again. I was working two jobs. X.Janitor at state building.X That's why I had got the job. because when I got hurt the first time I was so behind on these bills and I was just starting to catch up on them and something else hit me in th head. That piece that hit me was about 12 feet long, between about thirty-five pounds, coming from thirty feet from the air.Already was scared to go back into the pocket. Used to get shaky and scared when got hurt the other time. Here I go back worried again. My head is lightheaded. Worried about my family. X went to the doctor and he kept me from 2 to about six o'clock p.m. because he knew I wasn't ready to go home. Xhit me on the rightside instead of the left side. (shows hickey on left side leftside, so many stitches), this time came down not pointed but flat and head was swollen.X had brainscan the first time. The first time they took and hid the piece. This time I took the piece. No screws, they don't screw them on the ceiling, it's attachmentlike clamp on. Now I'm scared to even walk up in the building. I'm lookng everywhere. There were three people in there with me and didn't get anybody but me.(names them). I feel very lightheaded.

# Dr. Nathan Hare, Ph.D., Ph.
*PM/2 for Windows*
# Progress Notes for Sunday, Roman

### 02/22/1999

2/17/99 at 8:35 a.m. M line metro trane inbound to downtown, lady boarded train at Stonestown platform. She rode three stops aand assaulted at St. Francis Circle. Came up and said I was rude and what's my name and number I stood up and opened door to cab, trying to be courteous and kind and polite, so she could get a good look at my i.d. number on my arm, --but before that, my train had the destination sign, but every stop I announced it on the pa that this car is only going to the west portal station. she walked up and knocked on the cab door etc.--she kicked me in the right knee and leg, it was happening so fast, I was shocked, pushed the cab door on my middle finger and threw ink pen at me and demanded that I let her off. I called my supervisor and central control and needed medical attention and please respond as soon as possible. Supevisor showed up. I told him I wanted this lady arrested and treatment for my leg because under excruciating pain. supervisor went off on me, yelling and screaming at me,etc.I'm already hurt.  So I managed to move the train.  X the pain was just too unbearab le, and my finger had been slammed, the nail broke off finger and it was throbbing and my knee was in excruciating pain, where I couldn't tolerate it, I had to call for help, then she running and screaming trying to stir up my ohter passengers.  Passengers telling her she was wrong. X my knee is still hurting but I'm not able to function, I'm not in the frame of mind. I can't concentrate onmy onwork. this is the same leg I got shot in 1994. X I was getting robbed. X off work then.  I can't sleep. the pain never goes away.  I can't eat right, can't eat anything but alittle junk food. X haven't weighed myself.  They gave me all of these medications. Dr. Dominique Tse, M.D., for hand, designated doctor for hand., after Kaiser.  Saw Kaiser dr. day of the injury.  Saw Dr. Moore Dixon at Kaiser for therapy appt. 26. See XDr. Kaye, S.F. doctor.  feeling pressured by him too much, makes it worse than it was, doubting me, trying to ma

make me bend. Wouldn't even take x-ray.  Xstarted having feelings the day of the injury. that's when I called you to try to get an appointment. I was on the edge of leaving the train and walking right over to your office, couldn't get app0intment. I went strait to the doctors and then to police station and filed a report.  I fel so frustratedand angry, unjust, I feel like revenge, mistreated and wrongfully represented by supervisor, disregard for my pain.  Tense all the time, really down and depressed, looks like it's no way out, everything I do is wrong,  Looks like I can't get no help from anybody.  X was a problem mentally because you don't think a lady's going to assault you.  My neighbors and people at store laugh about it because a lady, in disbelief, like a lady can't hurt a man.
Pain makes it hard to function.  I can't collect my thoughts like I want to for thinking about it on a constant basis. I haven't had a break in thinking about it since it happened.  My thoughts are always on this assault, and I'm walking around like a time bomb.  (fantasies of revenge). My mind. I'm just not normal. X(doesn't even know how to find her).

### 02/25/1999

Symptoms of anxiety.  Feels mixup in his case.  SF General referred to Kaiser instead of treating, said I have a designated doctor. Has signed designated form but that's why they told me to Kaiser.

### 03/05/1999

Very agitated.  More attentive to surroundings, more paranoid and suspicious, more hyper. I just  can't seem to get on, I can't sleep, i don't like people no more, feel insecure as an employee, not proetcted, subject to attack, just afraid, nervous, can't go outside, when I do go into the house after going to therapy and dr. and stuff, and city doctors, once i'm inside I just lock myself in.  I say nobody didn't get me today. i don't know when I might get hurt again. I'm living on the edge, that somebody might get me for nothing.  scared of people afraid somebody's going to sattack me. always looking over my shoulders, tring to be sure of what's around me when I get on public transporation. hard to get a taxi because they don't want to stop for a black person, at least me.
occupagtional therapy at Kaiser. etc. see copies in file. Feelings of rejection re authorities,etc.

### 03/10/1999

Filed grievance against superintendent (cf. copy). Lousy day yesterday. Frame of mine terrible. couldn't focus on things. (feelings of lack of social support, requiring extra measures). Feeling more and more "paranoid" X suspicous of white females and fear they're going to attack me verbally or physically.  constantly thinking about it and can't let go and can't focus on anything else. just don'thave any interest in things. Feel i don't mean nothing, just a part of, a piece of machinery or something, not a person or a human being.  Not able to sleep or eat much. Get up 4 am. in morning. physical therapy. hard to get there on time. Hard to keep my appointment. Saw Dr. Odsen, gave me until the 25th.

Nathan Hare, Ph.D., Ph.D.
1801 Bush Street, Suite 118
San Francisco, California 94109
Phone: (415) 929-0204)
FAX:   (415) 929-1677

Client Name:   Roman Sunday
Date of Report: 02/28/99

Initial Date of Treatment: 2/22/99
Most Recent Date of Treatment: 2/22/99
Total Number of Sessions to Date=

Current Medications:
   Ibuprofen, 600 mg. , propoxyphene n/adap/ naproxen 500 mg ,g./m. , cf. Dr. Tse

Current Symptoms:
   INTRUSIVE MEMORIES OF TRAUMATIC EVENT
   CUE-RELATED PSYCHOLOGICAL DISTRESS
   AVOIDANCE OF ASSOCIATED EVENTS OR CUES
   AVOIDANCE OF STIMULI ASSOCIATED WITH TRAUMA
   AVOIDANCE OF TRAUMA-RELATED ACTIVITIES
   SOCIAL WITHDRAWAL
   HYPER-VIGILANCE
   INSOMNIA
   PROBLEMS CONCENTRATING
   IRRITABILITY
   DEPRESSED MOOD, SADNESS, EMPTINESS, TEARFULNESS
   IRRITABILITY
   INSOMNIA OR HYPERSOMNIA
   POOR CONCENTRATION

Diagnosis:
AXIS I
   309.81, Post Traumatic Stress Disorder
   296.3,  r.o. Major Depression
AXIS II
   V71.09, No Diagnosis
AXIS III
   Cf. Dr. DominicTse, M.D.;  Kaiser
AXIS IV
   Psychosocial Stressors: Attacked while driving the bus at work; feelings of shame and rejec
AXIS V
   Current GAF: 45

Treatment Goals:
   Reduce distressing cognitions.
   Improve concentration.
   Reduce hyper-vigilance.
   Reduce intrusive memories of traumatic event.
   Reduce situation bound avoidance.
   Learn to be comfortable with thoughts associated with trauma.
   Reduce over generalization of traumatic stimuli.
   Reduce depressive cognitions.



Copyright © 1989 THE REGENTS OF THE UNIVERSITY OF MINNESOTA.
All rights reserved. Distributed exclusively by National Computer Systems, Inc. P.O. Box 1416,
Minneapolis, MN 55440 under license from The University of Minnesota.
Printed in the United States of America.

"MMPI-2" and "Minnesota Multiphasic Personality Inventory-2" are trademarks of The
Regents of the University of Minnesota.

MMPI-2 REPORT

```
NAME          : Roman Sunday
SEX           : m
TEST DATE     : 0513099
AGE           : 54
EXAMINER      : Nathan Hare, Ph.D., Ph.D.
```

Configural Code Type: 73

VALIDITY:  This is a valid profile.  Similar patterns of answers indicate a person who is denying many things, including common human frailties.  Self is being presented in an improbably favorable light. A genuine lack of awareness and lack of insight is most likely but naively faking good is a possibility.  These patients tend to be somewhat defensive and are reluctant to admit problems.

AFFECT:  Patients with this profile tend to be tense and may be anxious and experiencing discomfort.
     Some distress is indicated and this may be due to appropriate situational dissatisfaction or an adjustment to chronic depression. Worrying is a possibility.

PERSONALITY/BEHAVIOR:  Overt behavior can show signs of anxiety and tension.
     Similar scores often describe a cynical, dissatisfied, pessimistic, and demanding individual who is narcissistic, self-centered, and selfish.  A sour, defeatist, and complaining attitude is likely.  They can be unambitious and whiny.
     This person is presenting himself as very masculine.  Associated features include: adventurous, coarse, easy going, aggressive, emphasizes physical strength, compulsive, preference of action to thought, and inflexibility about masculinity.  Doubts about masculinity are possible.

INTERPERSONAL:  Hostility is often expressed indirectly.

COGNITIVE:  Hysteroid defenses, especially repression are likely. Lack of insight and denial of psychological problems can be characteristic.
     Somatization is likely to be a well used defense.
     Some pessimism may exist.
     Similar men tend to have a narrow range of interest and may lack originality.  Other possibilities include a preference for the practical and minimal insight.

SOMATIC:  Frequently these patients present with chronic physical ailments that are the result of emotional stress.  Their complaints may focus on the extremities.  Look for a lack of appropriate concern regarding these complaints.
     Patients with this profile tend to be overconcerned about body functioning, complain a great deal, and acknowledge a large variety of

complaints.  Complaints can be vague and include chronic fatigue, weakness, and pain without a clear organic basis.  When documented medical problems exist, exaggeration of symptoms is likely.  Somatic complaints may be an expression of dependency and used to manipulate.

DIAGNOSTIC CONSIDERATIONS:  Two diagnostic possibilities are psychological factors affecting a physical condition and anxiety disorder.  Related DSM-IV Categories:  Anxiety Disorder (e.g., Generalized Anxiety 300.02, Adjustment Disorder with Anxious Mood 309.24, Post-Traumatic Stress Disorder 309.81).

PROGNOSTIC INDICATION:  Guarded

TREATMENT CONSIDERATIONS:  Psychological intervention can be difficult due to the excessive use of defense mechanisms.  Consider relaxation exercises and/or biofeedback to help reduce tension and increase awareness of physiological reactions associated with emotional responses.


Nathan Hare, Ph.D., Ph.D.

-------------------------------------------------------------

This Minnesota Multiphasic Personality Inventory - 2 (tm) interpretation provides hypotheses about clients.  All statements are based on behavioral probabilities.  Each interpretive statement can be viewed in the following light:  in one or more research studies, a clinically significant number of people who had similar answers exhibited the stated characteristic.  These hypotheses need to be confirmed using other clinical information before they are accepted.  This report should only be used by professionals trained in test interpretation.  Treat the information in this report as confidential.

Minnesota Multiphasic Personality Inventory - 2 and MMPI-2 are trademarks owned by the University Press of the University of Minnesota.

MMPI-2 REPORT by Giles D. Rainwater, Ph.D.  Programming by Jan Rebmann.  Psychometric Software, Inc.  P.O. Box 1677, Melbourne, FL 32902-1677.  Copyright 1989.  All rights reserved

```
                              MMPI-2 PROFILE

          L    F    K    HS   D   HY   PD   MF   PA   PT   SC   MA   SI
100  -                   +                             *                -  100
     -                   +                                              -
     -                   +             *                                -
     -                   +                                              -
     -                   +                                              -
 90  -                   +                                              -  90
     -                   +                                              -
     -                   +                                              -
     -                   +                                              -
 80  -                   +                                              -  80
     -                   +                                              -
     -                   +                                              -
     -                   +                                              -
     -                   +                                              -
 70  -  *                +                                              -  70
     -                   +                                              -
     -   --   --    --   + *    --   .  --   --   --   --    --   --    -
     -             *     +      *    --   .                             -
 60  -        *          +                                              -  60
     -                   +                             *                -
     -                   +                   *                          -
     -                   +                                              -
 50  -   --   --    --   + --   --      --   --   --    --   *    *  --  -  50
     -                   +                                              -
     -                   +                                              -
     -                   +                                              -
 40  -                   +         *                                    -  40
     -  -- -- -- -- -- + -- -- -- * -- -- -- -- -- -- -- -- -- -- -- --
     -   --   --    --   + --   --      --   --    --   --   --   --    -
     -                   +                                              -
 30  -                   +                                              -  30
                         1    2    3    4    5    6    7    8    9    0
          L    F    K    HS   D   HY   PD   MF   PA   PT   SC   MA   SI
     T    70   62   63   67   64   95   40   38   57  555   58   47   49
```

PAGE 3

# NATHAN HARE, Ph. D.

*Clinical Psychologist*

Cathedral Hill Professional Building — 1801 Bush Street, Suite 118, San Francisco, CA 94109

Hours by Appointment Only

Telephone: (415) 929-0204
Fax  (415) 929-1677
e-mail: nhare@blackthinktank.com

4/21/99
(date)

Monique Diaz _____ Claims Examiner
Firm Solutions
P.O.Box 26896
San Francisco,California 94126

RE:  Employee:    Roman Sunday
     Employer:    MUNI/CCSF
     Claim No :   36990775
     DOI:         02/17/99

This is to provide a report of the condition and status of the above-mentioned patient:

1.     Date last examined _____ 4/19/99 _____

       Scheduled next date of treatment ___ 4/28/99

2  Diagnosis: ___ Posttraumatic Stress Disorder (309.81)
                  r.o. Depressive Disorder

3. Still under treatment?   (Yes/No)

4. Current treatment plan ___ Same   (see attached)

   _____

   _____

5. Estimated Date of Return to Work ___ 5/30/99

6  Limitations/barriers to returning to work: ___ temporary total disability

Page 2

ATTN: ___Monique Dias,ClaimsExaminer___

Re: _____Roman Sunday_____          ___4/21/99___
            (name)                              (date

Cont'd from page 1:

_____

_____

7. Restrictions for modified duty:_____ - - -_____

8. Is the patient medically eligible for vocational rehabilitation services?
   (Yes/No)

9. Discharged, Cured as of _____ - - -_____

10. Is patient permanent & stationary?_____no_____
                                    As of_____
                                              (date)

11. What, if any, permanent disability _____ - - - -_____
    Yes_____
    Subjective:_____
    Objective:_____
    Work preclusions:_____

12. Estimated length of treatment__ to return to work date; as needed basis
                                    during transition period

13. Additional Recommendations:_____ - - - -_____


                    _Nathan War_
                    Signature of Provider
                        4/21/99
                    _____
                        (Date)

## MMPI-2 REPORT

```
NAME        : Roman Sunday052099
SEX         : M
TEST DATE   : 052099
AGE         : 54
EXAMINER    : Nathan Hare, Ph.D.
```

Configural Code Type: 31

VALIDITY:  This is a valid profile.  Similar patterns of answers indicate a person who is denying many things, including common human frailties.  Self is being presented in an improbably favorable light. A genuine lack of awareness and lack of insight is most likely but naively faking good is a possibility.  These patients tend to be somewhat defensive and are reluctant to admit problems.

AFFECT:  Emotional over-control is the norm.  Their excessive inhibition of hostility and aggression bottles up feelings.  This prevents direct emotional expression and resolution.  Instead, feelings are expressed indirectly, if at all.  A number of these patients are depressed and it can be an underlying depression.
     Some distress is indicated and this may be due to appropriate situational dissatisfaction or an adjustment to chronic depression. Worrying is a possibility.

PERSONALITY/BEHAVIOR:  Personality is characterized by a hysteriod adjustment.  They tend to be demanding, immature, egocentric, selfish, and generally narcissistic.  A pollyannaish attitude prevents acknowledgment of life's difficulties.  Dependency is usually prominent.  Attempts are made to meet needs in unobtrusive yet manipulative ways.
     This person is presenting himself as very masculine.  Associated features include: adventurous, coarse, easy going, aggressive, emphasizes physical strength, compulsive, preference of action to thought, and inflexibility about masculinity.  Doubts about masculinity are possible.

INTERPERSONAL:  A history of sexual acting-out is entirely possible. Shallow social relationships may be characteristic.
     Others may perceive them as aloof and uninvolved.

COGNITIVE:  Excessive use of defense mechanisms is typical.  The primary defenses are repression and denial.  Projection and rationalization can be present.  When difficulties are acknowledged, blame is often placed on others.  An exaggerated need for affection and attention may be related to strong dependency needs.  Feelings of insecurity are likely.  Insight is probably minimal.
     Some pessimism may exist.
     Similar people may think differently and have unique views about the world.  Their thoughts may be creative, avant-garde, and imaginative but excessive daydreaming and avoidance of reality through

fantasy are possible. Abstract interests and the neglect of people and practical matters are conceivable. Schizoid processes may be present.

Similar men tend to have a narrow range of interest and may lack originality. Other possibilities include a preference for the practical and minimal insight.

SOMATIC: The ineffective resolution of feelings results in physical complaints. Periods of stress often result in physical complaints. These complaints may be unconsciously expressed and produce secondary gain. Pain is a typical complaint and is often located in the extremities (arm, leg, neck, and head). Pain complaints can involve the back and chest. Other typical complaints include weakness, fatigue, dizziness, sleep disturbance, numbness, and eating problems (anorexia, nausea, vomiting, obesity). Look for a lack of appropriate concern about symptoms and problems.

DIAGNOSTIC CONSIDERATIONS: Two diagnoses frequently cited in connection with this profile are psychophysiological reaction and hypochondriasis. Other diagnoses include conversion reaction, hysterical neurosis, somatoform disorder, and anorexia. Even though functional disorders are correlated with this profile, this profile cannot be used to reliably distinguish between functional disorders and actual physical disorders. In some populations a small but significant portion of these patients were diagnosed as psychotic, typically schizophrenic. A diagnosis of hysterical personality can be considered. Related DSM-IV Categories: Psychological Factors Affecting a Physical Condition 316; Hypochondriasis 300.7; Conversion Disorder 300.111, Dissociative Disorder 300.1; Somatoform Pain Disorder 307.80/307.89, Generalized Anxiety Disorder 300.02, Panic Disorder 300.21/300.01, Depersonalization 300.60, Dysthymia 300.40; Body Dysmorphic Disorder 300.7, Somatization Disorder 300.81, Undifferentiated Somatoform Disorder 300.81; Anorexia Nervosa 307.1; Psychotic Disorder (e.g., Brief Psychotic Disorder 298.80, Delusional Disorder 297.1, Induced Psychotic Disorder 297.30, Schizophrenia 295, Schizophreniform Disorder 295.40, Schizoaffective Disorder 295.70); Histrionic Traits/Personality 301.50.

PROGNOSTIC INDICATION: Guarded to good.

TREATMENT CONSIDERATIONS: These patients often resist accepting traditional psychotherapy. They tend to reject psychological interpretations. When therapists resist their excessive demands for attention or their demands for immediate concrete solutions, they may terminate psychotherapy. Suggestibility may serve to enhance compliance to suggestions. Short term stress-inoculation may help. In medical settings, response tends to be positive to placebos. These patients are likely to benefit from becoming more aware of their emotional reactions and the causes of these reactions.

---

PAGE 2

Nathan Hare, Ph.D.

--------------------------------------------------------------

Case 4:07-cv-05308-SBA    Document 1    Filed 10/18/2007    Page 47 of 102

This Minnesota Multiphasic Personality Inventory - 2 (tm)
interpretation provides hypotheses about clients. All statements are
based on behavioral probabilities. Each interpretive statement can
be viewed in the following light: in one or more research studies, a
clinically significant number of people who had similar answers
exhibited the stated characteristic. These hypotheses need to be
confirmed using other clinical information before they are accepted.
This report should only be used by professionals trained in test
interpretation. Treat the information in this report as
confidential.

Minnesota Multiphasic Personality Inventory - 2 and MMPI-2 are
trademarks owned by the University Press of the University of
Minnesota.

MMPI-2 REPORT by Giles D. Rainwater, Ph.D. Programming by Jan
Rebmann. Psychometric Software, Inc. P.O. Box 1677, Melbourne, FL
32902-1677. Copyright 1989. All rights reserved

PAGE 3

**MMPI-2 PROFILE**

L    F    K    HS    D   HY   PD   MF   PA   PT   SC   MA   SI

February 19, 1999

**Complaint Regarding Transit Supervisor**

TO WHOM IT MAY CONCERN:

On February 17, 1999 at 8:35 a.m. while working run 047, operating car 1457 on the M-line Oceanview, Inbound at St. Francis Circle. I, Roman Sunday #2187 made a call to Central Control Concerning a physical and verbal assault on me. I made a request to please send me some assistance as soon as possible. Within moments a TS (Street Supervisor George Morley) was there. When I stressed to him (TS) the urgency, and seriousness of the situation, I also expressed that I could not operate the car under this condition. I asked him (TS) would he please call for medical assistance and the police. I received no cooperation. Neither police, nor ambulance was contacted. Yet the TS flew into a fit of anger and demanded I immediately move my car to the West Portal Station in what I deem an unprofessional manner. This was done in front of twenty (20) passengers. I proceeded to do what I was told and moved my car. It was necessary for me to go to the police station and the hospital later that day. A doctor and a police are on file. (Case No. 990-204-972) regarding this incident. The TS report does not have the name of assailant or the witness cards or witness's listed, although witness cards were given to the TS at the scene. I personally had seen the TS interviewing the assailant. A co-worker whose name is James Hamilton ID #1443, (whose car was behind me at the time) also did witness the TS receive witness cards from witnesses. I claim all the aforementioned to be true.

Sincerely,

*Roman Sunday*

Roman Sunday
#2187
Green Division

# NATHAN HARE, Ph. D.
*Clinical Psychologist*

Cathedral Hill Medical Center Building * 1801 Bush Street * San Francisco, California 94109

Hours by appointment only

July 29, 1991

Telephone  (415) 929-0204

Dispatcher
MUNI
Woods Division
1001 22nd St.
San Francisco,California 94107

Reference: Roman Sunday
           Cap #: 2187

This is to verify that Mr. Roman Sunday has been examined and treated at this facility for severe anxiety and depression and is deemed disabled for employment at this time.  It is recommended that Mr. Sunday receive a disability leave of approximately one month, August 26, 1991.

Meanwhile, I will continue to monitor his condition and report to you as may be indicated.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#Psy5202

NH:ra

# DOCTOR'S FIRST REPORT OF
# OCCUPATIONAL INJURY
# OR ILLNESS
### STATE OF CALIFORNIA

Immediately after first examination, mail original to insurer or self-insured employer. Failure to file a doctor's report is a misdemeanor (Labor Code 6413.5). In addition, in the case of diagnosed or suspected pesticide poisoning, or pesticide-related to: Send one copy of this report directly to the Division of Labor Statistics and Research, P.O. Box 603, San Francisco, CA 94101; send one copy to your local health officer; notify your local health officer by telephone within 24 hours.

**A. INSURER** Workers' Compensation Division, C&CSF

| | DO NOT WRITE IN THIS SPACE |
|---|---|
| **1. EMPLOYER NAME** MUNI, Woods Division | |

2. Address:  No. and Street  City  Zip
1001 22nd St.  San Francisco, California  94109

3. Nature of business (e.g., food manufacturer, building construction, retailer of women's clothes)
transportation

| 4. PATIENT NAME (First name, middle initial, last name) Roman Sunday | 5. Sex ☒ Male ☐ Female | 6. Date of birth 02-22-45 |
|---|---|---|

7. Address:  No. and Street  City  Zip
321 Oxford Way, Apt. 63, Belmont, Ca  941002

8. Telephone number (415) 345-3760

9. Occupation (Specific Job Title)  bus operator

10. Social Security Number

11. Injured at:  No. and Street  City
Ingalls  San Francisco

County  San Francisco

| 12. Date and hour of injury or onset of illness 07-01-91 circa 12:45 a.m. (drop in 07-01-91) | 13. Date and hour of first examination or treatment 07-08-91  2:00 P.M. | 14. Date last worked 07-01-91 | 15. Have you (or your office) previously treated patient? ☐ Yes ☒ No |
|---|---|---|---|

**16. HISTORY** (History of injury or onset of illness. If occupational illness, specify exposures, chemicals and/or compounds.)

Pt. was assaulted, hit on the head by an unknown object. Taken to St. Francis Hospital. After 3 or 4 hours, s upervisor came and picked him up and took him back to his division. Dispatcher instructed to call wife. She picked him up P t iced on disability by Dr. Gottlieb

**17. MEDICAL FINDINGS** (Use reverse side if more space is required and for remarks, if any.)
A. Subjective complaints

B. Objective findings

Somatic complaints. Tension headaches, lightheadedness, numbness, tingling, difficulties with memory and routine functioning, chronic worry, confusion, irritability, hopelessness, tension, feelings of
X-ray and laboratory findings (State if none.)  persecution, difficulty concentrating

C. Diagnosis (If occupational illness, identify etiologic agent.)

Anxiety disorder NOS (DSMIII-R-300.00)

| 18. Are your findings and diagnosis consistent with history of injury or onset of illness? If "No", please explain. | ☒ Yes | ☐ No |
|---|---|---|

| 19. Is there any other current condition that will impede or delay patient's recovery? If "Yes", please explain. | ☐ Yes | ☐ No |
|---|---|---|

**20. TREATMENT**  Treatment Rendered

☒ Office  ☐ Hospital out-patient  ☐ Hospital in-patient

Individual psychotherapy

Further treatment required? ☐ Yes ☐ No

Physical therapy? ☐ Yes ☐ No

If in-patient, Give Hospital Name and Location  Date admitted  Estimated stay

**21. WORK STATUS**

Is patient able to perform usual work? ☐ Yes ☒ No

If no, give date when you estimate patient will be able to return to:
Usual work: 08-26-91  Modified work: --

| DOCTOR (name and degree) (Type or print)  No. and Street  City  Zip |
|---|
| Nathan Hare, Ph.D. . 1801 Bush St, #127, San Francisco,CA  94109 |

| Doctor's Signature Nathan Hare # Psy 5202 | IRS Number 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 | Telephone number (415) 929-204 | Report Date 07-29-91 |
|---|---|---|---|

FORM 5021 (Rev. 2)  PLEASE SUBMIT YOUR REPORT WITHIN FIVE DAYS OF YOUR EXAMINATION

# GENERAL INSTRUCTIONS TO THE PATIENT

1. **YOU HAVE RECEIVED EMERGENCY TREATMENT ONLY** and this is not intended to be a substitute for an effort to provide complete medical care. Your follow-up doctor (named below) should receive a copy of your record. It is important that you report to him/her on any problems that should arise or any failure to improve from this problem, because it is impossible to recognize and treat ALL elements of your health in a single Emergency Department visit. IF YOU ARE UNABLE TO CONTACT A PRIVATE DOCTOR for treatment of continued problems you may return to the Emergency Department for reassessment and referral.
2. **IF X-RAYS WERE TAKEN**, you may have been treated on the basis of the emergency physicians initial interpretation of the x-ray films. These will be reviewed by a Radiologist for final interpretation. If the Radiologist's impression differs significantly from the emergency physicians, we will attempt to contact you at your stated address and phone number. In any case, if you have a question or problem related to the x-rayed area, you may call the Emergency Department for a report the day after your examination.
3. **IF MEDICATION IS PRESCRIBED**, be certain to fill your prescription and take as directed or treatment will be incomplete.
4. **YOUR BILL.** The itemized statement should arrive within 30 days. Because of the sophistication of the equipment, and due to the need for 24 hour, 7 day a week availability of staff physicians and support people, the fees for Emergency treatment are understandably higher than for similar treatment in a Doctor's Office. Private Physicians or Consultants will bill you separately. For any questions regarding your bill, please contact the Outpatient Billing Department at 775-4321, Extension 2149.

---

## ☐ HEAD INJURIES:

Although no evidence of any serious injury is found at this time, contact your physician immediately if any of the following conditions occur. If unable to reach your physician, return to the Emergency Department at once, day or night.
1. Increasing drowsiness, difficulty arousing patient
2. Persistent or increasingly severe headache
3. Persistent vomiting
4. Stiffness of neck
5. Drainage of blood or clear fluid from ear or nose
6. Weakness of limbs or loss of coordination
7. Convulsions (fits)

## ☐ WOUND CARE (CUTS, ABRASIONS BURNS, ETC.):

1. Keep dressings clean and dry and do not get stitches wet. For 24 hours after that time wash wounds daily with gentle soap and water.
2. Elevate the wound to help relieve soreness and to help speed wound healing.
3. Despite the greatest care, any wound can become infected. If your wound becomes red, swollen, shows pus or red streaks, or feels more sore instead of less sore as days go by, you should report to your doctor right away.
4. To prevent excess moisture, leave wound uncovered at night after the second day and rebandage in the a.m.
5. If tetanus shot was given, it provides protection for five years. If not given check your records to be sure you've had one within five years.

Tetanus Lot No. _____

## ☐ BACK AND NECK INJURIES:

1. Use heat or cold on the injured area, whichever seems to help the most. Be careful not to burn yourself.
2. Rest as much as possible on a flat firm surface in a comfortable position. Stay off feet until you are improved.
3. Avoid positions and movements that make the pain worse.
4. Relax emotionally. If you are tense the problem may be worse.
5. Gentle massage will increase circulation in sore muscles and may decrease soreness.

## ☐ SPRAIN, FRACTURE OR SEVERE BRUISES:

1. Elevate the injured part to lessen swelling and pain. This may be comfortably done with pillows, blankets, etc.
2. Ice packs also help prevent swelling, especially during the first 48 hours. Place ice in plastic or rubber bag, then cover bag with cloth.
3. Immobilization by sling, elastic bandage, or simply not moving the injured area will decrease swelling or pain.
4. FOR ANY INJURY, if the part swells anyway or gets cold, blue or numb, or if pain increases markedly, have it checked promptly by a physician.
5. If an elastic bandage was applied:
   _____ rewrap if it is too tight or loose
   _____ loosen it for 30 minutes at least every 8 hours.
6. If a plaster cast was applied:
   _____ keep it perfectly dry at all times
   _____ wait 48 hours for the cast to become strong before you apply pressure or weight on any part of cast
   _____ elevate and wiggle toes or fingers to help prevent swelling in the cast. This should be done often unless it hurts a lot or instructed otherwise.

---

| Date In | Time In | Ins. Carrier | Visit Type | AFTER CARE INSTRUCTIONS SAINT FRANCIS MEMORIAL HOSPITAL | Med. Serv. Code | Rev. Code | Medical Rec. No. | Registration No. |
|---------|---------|--------------|------------|-----|-----|-----|-----|-----|
| 07-01-91 | 0133 | 80 | 0 | | 06 | | H 102366 | 9339466 |

| PAT | | | | |
|-----|-----|-----|-----|-----|
| Name SUNDAY, ROMAN | Phone (415) 345-3760 | Age 46 | D.O.B 02-22-45 | Sex M | M.S. M |

| Medicare No. | Eff Date Part A | Part B | Name on Card | Copy of Card |

| Medi-Cal No. | HIC Title II No. | Card Month | Poe Label | Copy of Card |

**INS**

Prim. Name CITY/COUNTY OF SF# 8640 | Insured's S.S. # | Copy of Card N

Sec. Name | ID # | Insured's S.S. # | Copy of Card

**PHY**

Private Phy. HARING, BRADLEY | Phone (415) 775-4321
900 HYDE STREET SAN FRANCISCO, CA 94109 | M.D. Code
Add.

**INSTRUCTIONS:**
head sheet to wife. no N scap. OFF WORK

| DISPOSITION | ☐ Expired |
|---|---|
| ☑ Discharged | ☐ Coroner |
| ☐ Transferred | |
| ☐ Admitted Room _____ | |

**CONDITION ON DISCHARGE:** SAT

**IMPRESSIONS:** CONTUSION/ABRASION Scalp

| MODE OF DISCHARGE | |
|---|---|
| ☑ Walking | ☐ Wheelchair |
| ☐ Ambulance | ☐ Gurney |
| ☐ Crutches | |

## I HAVE RECEIVED AND UNDERSTAND AFTERCARE INSTRUCTIONS

Follow-Up Physician Call Dr. KFR (Mon)
Patient Signature: Roman Sunday

| Valuables to: | |
|---|---|
| ☑ None | ☐ Family |
| ☐ Floor | ☐ Security |

M.D. Signature

Nurse Signature: M Massey

Discharge Time: 0235

FORM 7230-01 (1/90)

**PATIENT**

*(handwritten, top right):*
... from treatment Room
a. Check mental status - tell
   them you were assaulted
   or gun
2. GO to Kaiser

---

**St. Francis**
MEDICAL CENTER PHARMACY • 900 Hyde St., San Francisco, Ca. 94109

0070178 Dr.C.SCHMISING    07/17/91
ROMAN SUNDAY
ONE TABLET ORALLY TWICE A DAY.

20 NAPROSYN 500MG TAB SY
SUB FOR:    GGG
EXP:07/15/92

Product may be taken with meals
if GI distress occurs. Avoid
aspirin and products containing
aspirin.

**PLEASE READ THE ABOVE DRUG INFORMATION**

321 OXFORD WAY
THANK YOU FOR YOUR BUSINESS    345-3760
PLS CALL REFILLS 24HR AHEAD.
CCSF    Pay    0.00*
0 Refills Remaining

---

**Saint Francis Memorial Hospital**

## CARDIOLOGY-NEUROLOGY DEPARTMENT APPOINTMENTS
5th Floor • 900 Hyde Street • San Francisco, CA 94109 • 775-4321 ext. 2105

NAME _____

APPOINTMENT _____    TIME _____

DIAGNOSIS _____

ORDERING PHYSICIAN _____

☐ **EKG**
No appointment necessary. Mon. – Fri. 9 a.m. to 5 p.m.

**PLEASE CALL 775-4321, EXT. 2105 TO SCHEDULE THE FOLLOWING TESTS:**

☐ **PATIENT ACTIVATED AMBULATORY ECG**
Allow 20 minutes.

☐ **24 HOUR HOLTER MONITOR**
Allow 20 minutes.
Wear a loose fitting blouse/shirt which buttons down the front.

☐ **TREADMILL EXERCISE STRESS TEST** with Dr. _____
Allow 1 hour. Eat a light meal. Wear clothing and shoes suitable for walking/jogging.

☐ **THALLIUM**    Allow 2 hours for first part of test, then you will need to return
2 hours later for 1 more hour of testing.

☐ **ECHOCARDIOGRAM**
Allow 45 minutes.

☒ **ELECTROENCEPHALOGRAM (EEG)**  *w/ Charlie Staib*
Allow 1 hour.
Clean scalp; no hair oil or hair spray.
Eat a regular meal or snack prior to coming for EEG

☐ **ELECTROMYOGRAM (EMG)** with Dr. _____
Allow 30 minutes.
Limbs to be tested:

Nerve conduction studies:

☐ **CAROTID ARTERY STUDY**
Allow ½ hour.

☐ **OPG/DOPPLER**
Allow 1 hour.

☐ **PERIPHERAL ARTERY EXAMINATION**
Allow 1 hour.
Wear separates (blouse and pants/skirt) if possible.

☐ **VENOUS STUDY**
Allow 1 hour. Wear separates (blouse and pants/skirt) if possible.
Limb to be tested:

OTHER APPOINTMENTS: _____

PLEASE REPORT TO THE OUT-PATIENT REGISTRATION DESK
15 MINUTES PRIOR TO YOUR SCHEDULED TIME

Roman Sunday
321 Oxford Way, #63
Belmont, CA  94002

Incident

Date:  7-25-91

Time:  1:00 p.m.

Place:  In my home

I was in my bed when my 8 year old daughter and 4 year old son
heard a knock at the door.  Upon answering the door, they were told
that it was the police.  My daughter then returned to my bedroom
to inform me that the police were at the door.  I immediately got
out of the bed and answered the door.  As I opened the door to talk
with the officers, guns were drawn and I was told not to move.  My
children ran from our house to my cousin Marvin Gay's house screaming
and crying what was now taking place.  They were afraid that I would
be shot.  While a friend came over to talk with the officers, I was
handcuffed and detained in my home.  After 3 hours of being hand-
cuffed, I still had not been told why they were there or anything.
My wife was called from her job in San Jose to return home because
of the incident.  Two more officers where then called to the scene;
one being a _Sgt_ .  After being hit several times and the hand-
cuffs placed on my wrists too tight, I was still uninformed about
what was going on.  After 3 hours, I was taken to Chope Hospital
where I stayed until 1:00 a.m. the next morning, and then taken to
San Francisco to St. Francis Hospital where I was released the
next day on 7/26/91 at 3:00 p.m.  I went directly to the NAACP,
Ernest Davis, 825 Monte Diablo, San Mateo, CA  94401.  Both my
wrists are still numb from the handcuffs being too tight.

Page two

There were no warrants presented, but my house was searched.  I was
abused physically, mentally and verbally.  Just three weeks before
this present incident, I was assaulted and hit in the head by an
unknown assailant in which I am still making doctor visits from that
incident.  On 7/19/91 around 1:00 p.m. after lunch, I went to the
Belmont Police Station and informed Sgt. #1, of this incident and
was told that they couldn't do anything and that they did nothing
wrong on their part.


Roman Sunday

# PART III

ATTENDING PHYSICIAN'S STATEMENT — FOR CREDIT DISABILITY INSURANCE
PATIENT'S NAME AND ADDRESS

## AUTHORIZATION FOR RELEASE OF MEDICAL AND EMPLOYMENT INFORMATION                    AGE

I AUTHORIZE any physician, medical practitioner, hospital, clinic, other medical related facility, insurance or reinsuring company, consumer reporting agency, or employer having information available as to history, diagnosis, treatment, and prognosis with respect to any physical or mental condition of me to release to CUNA Mutual Insurance Society or its legal representative, any and all such information.

I understand the information obtained by this Authorization will be used to determine eligibility for insurance and/or eligibility for benefits under an existing policy. Any information obtained will not be released to any person or organization EXCEPT to reinsuring companies, or other persons or organizations performing business or legal services for these companies in connection with this claim, or as may be otherwise lawfully required.

I KNOW I may receive a copy of this Authorization. I AGREE a copy of this Authorization shall be as valid as the original. I AGREE this Authorization shall be valid for the duration of the claim.

Date Signed: 8-8-91                    Signature of Member: Roman Sunday

RETURN COMPLETED FORM TO:    CUNA MUTUAL INSURANCE SOCIETY
Post Office Box 2063
Pomona, California 91769

| | |
|---|---|
| **(1A)** DIAGNOSIS AND CONCURRENT CONDITIONS<br>If Fracture or Dislocation, Describe Nature and Location. | Atypical Anxiety Disorder (DSMIII-R-300.00) with reactive depression and somatic complaints |
| **(B)** IS CONDITION DUE TO PREGNANCY?<br>If "YES" What Was Approximate Date of Commencing of Pregnancy? | YES ☐ NO ☒ DATE _____ 19___ |
| **(2A)** WHEN DID SYMPTOMS FIRST APPEAR OR ACCIDENT HAPPEN? | DATE 07-01 _____ 19___ |
| **(B)** WHEN DID PATIENT FIRST BEGIN TREATMENT FOR THIS CONDITION? | DATE 07-04-91 19 91 |
| **(C)** HAS PATIENT EVER HAD SAME OR SIMILAR CONDITION?<br>If "YES" State When And Describe. | YES ☐ NO XX DATE _____ 19___<br>CONDITION _____ |
| **(D)** WAS PATIENT REFERRED FROM A PRIOR PHYSICIAN?<br>If "YES" State Name And Address. | YES ☐ NO XX NAME _____<br>ADDRESS: _____ |
| **(3)** GIVE ALL DATES OF MEDICAL TREATMENT FOR THIS CONDITION INCLUDING SURGICAL AND OBSTETRICAL PROCEDURES FROM SIX MONTHS PRIOR TO THE DATE DISABILITY BEGAN TO THE PRESENT. | OFFICE 07-04-91; 07-08-91; 07-15-91; 07-22-91; 07-29-91; 08-08-91<br>HOSPITAL _____<br>HOME _____<br>NURSING HOME _____ |
| **(4A)** IS PATIENT STILL UNDER MEDICAL CARE FOR THIS CONDITION?<br>If "NO" Give Date Services Terminated. | YES ☒ NO ☐ DATE _____ 19___ |
| **(B)** IF PATIENT REFERRED TO ANOTHER PHYSICIAN, GIVE NAME AND ADDRESS. | NAME _____<br>ADDRESS _____ |
| **(5A)** HOW LONG WAS OR WILL PATIENT BE CONTINUOUSLY TOTALLY DISABLED?<br>(Unable to Work) | FROM 07-04 19 91 THRU 08-26 19 91 |
| **(B)** HOW LONG WAS OR WILL PATIENT BE PARTIALLY DISABLED? | FROM N/A 19___ THRU _____ 19___ |
| **(6)** REMARKS | |

**(7)** PATIENT IDENTIFICATION NUMBER:

NATHAN HARE, Nathan Hare, PhD   8-8-91
SICIAN'S NAME (PRINT)   SIGNATURE (ATTENDING PHYSICIAN)   DEGREE   DATE
(415) 929-0_____

## PROGRESS NOTES

Name _Roman Sunday_

| DATE | NOTES |
|------|-------|
| 3-29-92 | Feeling depressed and angry. Not able to sleep at all. Tried to see Dr Kuby re Kaiser. Red top and prerequisates thymied attempts. Referred to Dr. Oscar Garleson M.D. S.K. Social isolation and withdrawl. Marital difficulties |

# NATHAN HARE, Ph. D.
### Clinical Psychologist

Cathedral Hill Medical Center Building * 1801 Bush Street * San Francisco, California 94109

Hours by appointment only                August 8, 1991                Telephone  (415) 929-0204


Lennie Contreras
Claims Adjuster
City & County of San Francisco
Employees' REtirement System
Workers Compensation Division
1155 Market Street, 3rd fl.
San Francisco,California 94103-1523


Reference:  Roman Sunday
            Claim #910004


Dear Ms. Contreras:

        I have just learned (per your computer
printout dtd 08-05-91 and testimony of Mr. Sunday) that his
workers compensation benefits have been cut off.  Part of
the problem may be due to the fact that he was on disability
at the recommendation of his providers at St. Francis, and
part of it may be the fact that Mr. Sunday experiences
periods of confusion and forgetfulness.  For instance, on
his first visit here, he came unannounced and unscheduled.
He attempted to schedule an appointment with a physician, LS
Kimbrough, M.D., at that time, but Dr. Kimbrough was
out-of-state, so that Mr. Sunday could not schedule an
appointment until August 20, 1991.

        Mr. Sunday is in no condition to return
to work at this time.  He was hospitalized on July 25 at the
request of Jennifer Dalstrom, of the San Francisco City
Employees Assistance Program, where he had gone on the
advice of union representatives when he could not reach his
psychotherapist.  He was placed in locked seclusion and was
observed to be "hostile, angry, disorientated and
irrational."  Eventually, he was taken from the Chope
Hospital in the wee hours of the morning to St Francis and
released the following afternoon.

        He was able  to keep a previously
scheduled appointment here on July 29, 1991, at which time
it was recommended that he be placed on disability for
approximately one month, August 26 (cf. attached copy of
letter to MUNI dated 07-29-91 and Doctor's Report of First
Injury).  At that time, we did not know that you were his
claims adjuster.

Lennie Conteras
08-08-91, page 2, re: Roman Sunday

I will continue to monitor Mr. Sunday's condition and report to you as may be required. If there are any questions, please let me know.

Sincerely,

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#Psy5202
National Register of Health Service
Providers in Psychology, #24473

NH:ra

State of California–Health and Welfare Agency                                    Department of Mental Health

# INVOLUNTARY PATIENT ADVISEMENT
# (TO BE READ AND GIVEN TO THE PATIENT AT TIME OF ADMISSION)

MH 303 E/S (3/86)

Name of Facility          SAINT FRANCIS MEMORIAL HOSPITAL

| Patients Name ROMAN | SUNDAY | Admission Date 7/26/91 |

Section 5157 (c) and (d) of the Welfare and Institutions Code (W&I) requires that each person admitted for 72 hour evaluation be given specific information orally and in writing, and a record of the advisement be kept in the patients mental record.

My Name is    F. IVEY, L.V.N.

My Position here is    Staff nurse

You are being place in this psychiatric facility because it is the opinion of the professional staff, that as a result of a mental disorder, you are:

Dangerous to yourself    ✓

Dangerous to others    ✓

Gravely Disabled (unable to
provide for your own food,
shelter and/or clothing)    ✓

(Document specific evidence which substantiates reason for hold).

We feel this is true because  BIB POLICE TO CHOPE HOSPITAL AT REQUEST OF HIS THERAPIST, JENNIFER DALTROM. PULLED A KNIFE ON THE POLICE. 46 Y/O BLACK MUNI DRIVER WAS ASSAULTED 3 WEEKS AGO & WAS HIT IN THE HEAD BY AN UNKNOWN ASSAILANT(S). COULD NOT REMEMBER OR DID NOT SEE THEM. WAS PLACED IN LOCKED SECLUSION. HOSTILE, ANGRY, DISORIENTATED, AND IRRATIONAL. QUESTION OF DISABILITY CLAIM. HAS BEEN WORKED UP AT S.P.M.H. FOR NEURO. (RESULTS: NEGATIVE) SEEN BY DR. SOONG X 3. DR. SOONG WILL SEE PT. IN THE AM.

You will be held for a period of up to 72 hours. This does include weekends or holidays. Your 72-hour period will begin: 1615:0 hrs 7/25/91    Your 72-hour evaluation and treatment period will end at: 1615:0 hrs 7/28/91

During these 72 hours you will be evaluated by the hospital staff, and the treatment you receive may in- clude medications. It is possible for you to be released before the end of the 72 hours, but if the pro- fessional staff decide that you need continued treatment, you can be held for a longer period of time. If you are held longer than 72 hours, you have the right to a lawyer and a qualified interpreter and a hearing before a judge. If you are unable to pay for the lawyer, then one will be provided free.

State law presumes you to be competent regardless of whether you have been evaluated or treated for mental disorder as a voluntary or involuntary patient.

Good Cause for incomplete Advisement

| Advisement completed by | Position Staff nurse | Date 07/26/91 |

# NATHAN HARE, Ph. D.
*Clinical Psychologist*

Cathedral Hill Medical Center Building  *  1801 Bush Street  *  San Francisco, California 94109

Hours by appointment only

July 29, 1991

Telephone   (415) 929-0204

Dispatcher
MUNI
Woods Division
1001 22nd St.
San Francisco,California 94107

Reference: Roman Sunday
           Cap #: 2187

This is to verify that Mr. Roman Sunday has been examined and treated at this facility for severe anxiety and depression and is deemed disabled for employment at this time.  It is recommended that Mr. Sunday receive a disability leave of approximately one month, August 26, 1991.

Meanwhile, I will continue to monitor his condition and report to you as may be indicated.

Sincerely,

Nathan Hare

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#Psy5202

NH:ra

# NATHAN HARE, Ph.D.
*Clinical Psychologist*

Cathedral Hill Medical Center Building * 1801 Bush Street * San Francisco, California 94109

Hours by appointment only

Telephone   (415) 929-0204

October 31, 1991

Attn: Bing Chu, Claims Adjuster
City & County of San Francisco
Employees' REtirement System
Workers Compensation Division
1155 Market Street, Ext. 87
San Francisco,Ca 94103-1523

Reference:   Roman Sunday
             Claim #910004

Dear Mr. Chu:

       In follow-up to my phone calls,
this is to bring you up-to-date on the condition and
prognosis for Mr. Roman Sunday.

       About two weeks ago, he was placed
in a neck brace, cervical collar, by Dr. Kimbrough, M.D.,
and prescribed Naprosyn, 500 mgm, causoprodol, 350 mg, and
tylenol w/cod for pain. This aggravated his struggle with
ruminiscenses and intrusive thoughts regarding the attack on
the bus. He has been endeavoring to do simple chores, but
this is hampered and restricted by severe pain, "writhing,"
in the neck and shoulders. He is taking physical therapy,
he remains apprehensive, afraid to go out for fear "some guy
might take advantage of me." "I have a feeling I'm going to
see that guy. I keep my eyes out for him like he's keeping
his eyes out for me." In fact, Mr. Sunday is fighting back
paranoia in reference to all males of the attacking variety.
He finds physical therapy of considerable benefit but
remains preoccupied wsith feelings of victimization and
dependency. He struggles with his wife to bring him to
therapy. There are increasing consequences for their
relationships arising from her reactive anxiety. The
Sundays have agreed to come in for couples therapy, starting
Monday, November 4.

       Meanwhile, Mr. Sunday is not in
condition psychologically to return to work at this time.
It is recommended that he receive a two-months extension of
his leave to January 02, 1991.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D. #34630
Licensed psychologist, clinical
#Psy5202
National Register of Health Service
Providers in Psychology, #24473

NH:ra

# NATHAN HARE, Ph. D.
### *Clinical Psychologist*

Cathedral Hill Medical Center Building  *  1801 Bush Street  *  San Francisco, California  94109

Hours by appointment only                    January 02, 1992                    Telephone   (415) 929-0204


Attn:  Bing Chu, Claims Adjuster
City & County of San Francisco
Employees' Retirement System
Workers Compenstion Division
1155 Market Street, Ext. 87
San Francisco, Ca. 94103-1523


Reference:  Roman Sunday
            Claim #910004


Dear Mr. Chu:

         This is to indicate that Roman Sunday
remains disabled and is in no condition to return to work at
this time.  He is currently experiencing the downside of the
fluctuating course of his recuperation.  His worry over his
condition has deepened his depressive reaction, and this
emotional sequalae has burdened his marital relations and
and complicated his overall ego dysfunctions and the
up-and-down nature of his sometimes sagging ability to cope.
For example, most recently he attempted to drive when, going
down a hill, he ran into a set of parked cars, although he
indicates that the police report states that the brakes
failed.

         I recommend that Mr. Sunday receive a
two-months extension of his leave at this time, to March 02,
1992.

Sincerely,

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#PSY5202

NH:ra

# NATHAN HARE, Ph. D.
*Clinical Psychologist*

Cathedral Hill Medical Center Building  •  1801 Bush Street  •  San Francisco, California 94109

Hours by appointment only

February 24, 1992          Telephone  (415) 929-0204

Attn:  Bing Chu, Claims Adjuster
City & County of San Francisco
Employees' Retirement Systgem
Workers Compensation Division
1155 Market Street, EXt. 87
San Francisco,Ca 94103-1523

Reference: Roman Sunday
           Claim #910004

Dear Mr. Chu:

        Although Mr. Sunday shows some improvement,
he remains disabled at this time, his sociopsychological
situation having eventuated in a general breakdown of his
social and psychological adjustment.

        He continues in treatment here and with Dr.
Kimbrough (for his pain and physical injuries).  Mr. Roman
continues to have problems sleeping.  He also continues to
be bothered by apprehensiveness, including phobic responses
and intrusive thoughts and ruminates about his feelings of
victimization by the attack.

        Mr. Sunday will need another two-months
extension of his disability leave to April 23, 1992.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#PSY5202

NH:ra

# NATHAN HARE, Ph. D.
*Clinical Psychologist*

Cathedral Hill Medical Center Building        1801 Bush Street        San Francisco, CA 94109

Hours by appointment only                    July 27, 1992

Telephone   (415) 929-0204


Arsenio Matawaran, Claims Adjuster
Employees Retirement System
Workers Compensation Division
City and County of San Francisco
1155 Market Street
San Francisco,Ca 94103-1523


Reference:  Roman Sunday
            Claims #910004

Dear Mr. Matawaran:

        This is to indicate that Mr. Sunday
remains in treatment here on a regular once-weekly basis.
However, he remains symptomatic and disabled for employment.
It is my impression that his condition is permanent and
stationary.

        A more detailed report may be available at
a later date.  Meanwhile, please feel free to contact me if
there are any questions.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#PSY5202

NH:ra

INTERNAL MEDICINE                                                    INDUSTRIAL MEDICINE

# L.S. KIMBROUGH, M.D.

500 SPRUCE STREET    •    SUITE 204    •    SAN FRANCISCO, CALIFORNIA 94118    •    (415) 752-8702

MAR 2 5 1992

DATE: _____

RE: _Roman Sunday_ _____

To Whom It May Concern:

The above-captioned patient has been under my medical
supervision since _04 | 01 | 91_ for treatment of _Rt._
_Chronic Cervical Sprain, Dorsal Sprain, Shoulder Sprain_

This patient is presently incapacitated  and is undergoing
treatment for his/her condition.  The approximate period of
this disability will be until _04 | 06 | 92_ in duration.

Should you have any questions regarding this patient or the
period of disability. please contact this office.

I trust this is the information which you desire.

                    Respectfully submitted.

                    L. S. Kimbrough  M. D.

LSK:hn

# NATHAN HARE, Ph. D.

*Clinical Psychologist*

Cathedral Hill Medical Center Building      1801 Bush Street      San Francisco, CA 94109

Hours by appointment only                                    Telephone  (415) 929-0204

October 5, 1993

Attn:  Mary Goldstein
THE NOETICS GROUP
595 Market Street, Suit 1800
San Francisco, Calif. 94105

Reference:  Roman Sunday
            DOI: 6-23-93
            Claim #: 937556

          This is to verify that Roman Sunday continues in
therapy on a once-weekly basis since resuming treatment here
on June 28, 1993,  His current diagnosis is Anxiety Disorder
NOS (DSMIII-R-300.00), with reactive depression and
somatization; r.o. Post-traumatic Stress Disorder.

          Mr. Sunday's most recent session was this
morning, 10-05-93.  He continues to suffer symptoms of
anxiety and depression, with a number of somatic complaints
and medical concerns connected to his injuries being treated
by Dr. Oscar Jackson, M.D., with collateral treatment and
examination by other practitioners.  His psychiatric
symptomatology include sleeplessness, apprehensiveness,
feelings of vulnerability, memory loss, ego dysfunctions,
injured self esteem, intrusive thoughts and situational
avoidance.

          These symptoms appear to be a recurrence of
previous difficulties which have been of considerable
duration and intransigence, although it is not yet clear
whether his condition is permanent and stationary.
Prognosis is difficult to establish momentarily, but he is
currently in no condition to resume work.  It is
recommended that he receive an extension of his leave for
approximately two months, to  December 6, 1993.  Although
prognosis is uncertain, I will continue to monitor and
evaluate his condition and report to you as may be
appropriate or indicated.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#PSY5202

NH:ra

**THE NOETICS GROUP**

595 MARKET STREET, SUITE 1800
SAN FRANCISCO, CA 94105

(415) 247-0900
FAX (415) 247-0910

October 22, 1993

Nathan Hare, Ph.D.
Cathedral Hill Medical Center Bldg.
1801 Bush Street
San Francisco, CA 94109

RE:    EMPLOYEE:    Roman Sunday
       EMPLOYER:    City & County of San Francisco
       D/INJURY:    6-23-93
       CLAIM NO.:   937556

Dear Dr. Hare:

We are in receipt of your letter dated October 5, 1993, which pertains to the above-captioned matter. Please be advised that we are objecting to this treatment because this was not authorized by our company and is considered excessive/not appropriate for this injury.

We need additional medical information to determine whether claimant's anxiety and depression is industrially related.

If we accept the claim for anxiety and depression, we will process your billing for payment.

Thank you for your cooperation in this matter. If you have any questions, please contact me at the number below.

Yours truly,

Mary A. Goldstein

Mary I. Goldstein
Claims Examiner

cc: Roman Sunday
    Frank Agnost, Esq.
    Dr. Oscar S. Jackson

# NATHAN HARE, Ph. D.
### *Clinical Psychologist*

Cathedral Hill Medical Center Building — 1801 Bush Street, Suite 118 S.F., CA 94109

Telephone/Fax: (415) 929-0204

Hours by Appointment Only

August 29, 1994

Mr. Chandler White, Claims Adjuster
THe NOETICS Group
595 Market Street, Suite 1800
San Francisco, Califonria 94105

RE: Roman Sunday
    Claim #947713

Dear Mr. White:

    This is to verify that Roman Sunday has been examined
at this facility today for anxiety, including phobic reactions,
and depression related to another attack while driving the bus on
08-06-94.

    Roman Sunday is in need of psychotherapeutic treatment
at this time, and this is request for an authorization to begin
treatment as soon as possible.

Sincerely,

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#PSY5202

NH:ra

**NATHAN HARE, PH.D.**
1801 BUST ST.. SUITE 127
SAN FRANCISCO, CA 94109
(415) 929-0204

OCTOBER 7, 1993

CHARGES OR
PAYMENTS MADE
AFTER LAST DATE
SHOWN WILL APPEAR
ON YOUR NEXT
STATEMENT

att: Jennifer Gee
THE NOETICS GROUP
595 Market Street, Suite 1800
San Francisco,Ca 94105

Reference: Roman Sunday
DOI: 6-23-93
Claim: 937556

PLEASE PAY
LAST AMOUNT
IN THIS COLUMN

PLEASE DETACH THIS PORTION OF YOUR STATEMENT AND RETURN WITH REMITTANCE

| 1993 DATE | FAMILY MEMBER | PROFESSIONAL SERVICES | PREVIOUS BALANCE | | | BALANCE |
| | | | CHARGE | CREDIT | ADJUST | |
|---|---|---|---|---|---|---|
| 06-28 | 3 | 90844 | 125 00 | | | |
| 07-09 | 3 | 90844 | 125 00 | | | |
| 07-16 | 3 | 90844 | 125 00 | | | |
| 07-26 | 3 | 90844 | 125 00 | | | |
| 08-03 | 3 | 90844 | 125 00 | | | |
| 08-10 | 3 | 90844 | 125 00 | | | |
| 08-17 | 3 | 90844 | 125 00 | | | |
| 08-24 | 3 | 90844 | 125 00 | | | |

TA — Test Administration
W — WAIS
D — DAP
B — Bender-Gestalt
T — TAT
R — Rorshach

I — Interview
O — Other
AN — Analysis
RE — Report
IT — Individual Therapy

FT — Family Therapy
GT — Group Therapy
HT — Hypnotherapy
CI — Crisis Intervention
CO — Conferences

page 2 of 2

**NATHAN HARE, PH.D.**
1801 BUST ST.  SUITE 127
SAN FRANCISCO, CA 94109
(415) 929-0204

att: Jennifer Gee
THE NOETICS GROUP
595 Market Street, Suite 1800
San Francisco, Ca  94105

CHARGES OR
PAYMENTS MADE
AFTER LAST DATE
SHOWN WILL APPEAR
ON YOUR NEXT
STATEMENT

Reference:  Roman Sunday
DOI:  6-23-93
Claim: 937556

PLEASE PAY
LAST AMOUNT
IN THIS COLUMN

PLEASE DETACH THIS PORTION OF YOUR STATEMENT AND RETURN WITH REMITTANCE

| DATE 1993 | FAMILY MEMBER | PROFESSIONAL SERVICES | PREVIOUS BALANCE | | | BALANCE |
| | | | CHARGE | CREDIT | ADJUST | |
|---|---|---|---|---|---|---|
| | | | | | | $1000.00 |
| 09-03 | 3 | 90844 | 125 00 | | | |
| 09-10 | 3 | 90844 | 125 00 | | | |
| 09-17 | 3 | 90844 | 125 00 | | | |
| 09-21 | 3 | 90844 | 125 00 | | | |
| 09-28 | 3 | 90844 | 125 00 | | | $1,600.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

TA — Test Administration      I  Interview      FT — Family Therapy
W  WAIS      O  Other      GT — Group Therapy
D  DAP      AN — Analysis      HT — Hypnotherapy
B  Bender-Gestalt      RE — Report      CI — Crisis Intervention
T  TAT      IT — Individual Therapy      CO — Conferences
R  Rorshach



**THE NOETICS GROUP**

(415) 247-090(
FAX (415) 247-091(

595 MARKET STREET, SUITE 1800
SAN FRANCISCO, CA 94105

August 31, 1994

Nathan Hare, Ph.D.
1801 Bush Street, Ste 118
San Francisco, CA 94109

Re:    Employee:    Roman Sunday
       Employer:    CCSF
       Claim No:    947713
       D/Injury:    08/06/93

Dear Dr. Hare:

Thank you for your letter dated August 29, 1994.

We cannot authorize your treatment of Mr. Roman Sunday as no workers' compensation claim has been filed for anxiety, including phobic reactions and depression for the injury date that you quoted, 08/06/94.

Until a workers' compensation claim has been made evident, the treatment for the above stated maladies are the responsibility of Mr. Roman Sunday.

Sincerely,

Chandler White
Claims Examiner

cc:    File

# NATHAN HARE, Ph. D.
*Clinical Psychologist*

Cathedral Hill Medical Center Building — 1801 Bush Street, Suite 118 S.F., CA 94109

Hours by Appointment Only                                              Telephone/Fax: (415) 929-0204

August 29, 1994

Mr. Chandler White, Claims Adjuster
THe NOETICS Group
595 Market Street,Suite 1800
San Francisco,Califonria 94105

RE: Roman Sunday
    Claim #947713

Dear Mr. White:

        This is to verify that Roman Sunday has been examined
at this facility today for anxiety, including phobic reactions,
and depression related to another attack while driving the bus on
08-06-94.

        Roman Sunday is in need of psychotherapeutic treatment
at this time, and this is request for an authorization to begin
treatment as soon as possible.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D.
Licensed psychologist, clinical
#PSY5202

NH:ra

**City and County of San Francisco**

### Request for Leave

*(Read reverse side for important information on leaves prior to completing form)*

## SECTION I - EMPLOYEE MUST COMPLETE.     NEW _____ RENEWAL _____

Name _SUNDAY, Roman_     Social Security No. _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_ Telephone No. _(415) 637-1304_

Address _923 Divisadero_     City _S.F._     State _CA_     ZipCode _94115_

Department _WOODS_     Class No. & Title _TRANSIT operator 9163_

Employment Status: *(Check one)*
Permanent ☒     Probationary ☐     Temporary ☐     Provisional ☐     Exempt ☐

Date of Leave:   From _8-6-94_     Through _____ Inclusive

Type of Leave Requested: *(Check one below)*

☐  Sick leave with pay     ☒ Sick leave without pay
   ☐  Check if you will be receiving State Disability insurance and wish to supplement with Sick Leave, Vacation or Compensatory Time credits *(Read Note 4 on reverse side)*
   ☐  Check if you will be receiving State Disability insurance and **DO NOT** wish to supplement with sick leave, vacation or compensatory time credits *(Read Note 4 on reverse side)*

☐  Military Leave *(copy of orders attached)*
☐  Educational Leave *(for permanent employees only)*
☐  Family Care Leave *(for permanent employees only)*
☐  Personal Leave *(See Reverse Side)*
☐  To Accept Other City and County Employment *(for permanent employees only)*

   Department: _WOODS_     Class No. & Title _9163_

☐  Other: *(Specify)* _____

Signature _X Roman Sunday_     Date _10-3-94_

## SECTION II - HEALTH CARE PROVIDER MUST COMPLETE  *(Read Notes 2 & 3 on reverse side)*

I, the undersigned health care provider, do hereby certify that the above-named employee is incapacitated for the performance of required duties for the reasons and time period indicated below. In signing this form, I understand and agree to answer in a timely fashion employer's reasonable questions as to the basis of the statements made on this form. I understand that my cooperation is necessary to secure employer's approval of sick leave.

Nature of illness: _Anxiety Disorder NOs (300.00), r.o. Post-traumatic stress disorder(309.89)_

Date of leave: From _08-06-94_     Through _10-03-94_ Inclusive  **(See Note 3 on Reverse)**

Health Care Provider: (Print Name) _Nathan Hare, PH.D._     License No. _PSY5202_

Address _1801 Bush sT,#118_     City _San Franci_ State _CAlif._ ZipCode _94109_

Signature _Nathan Hare, Ph.D._ _Roman Sunday_     Date _09-03-94_     Telephone _(415)929-02_

RETURN TO PATIENT WHO IS RESPONSIBLE FOR FORWARDING TO THE EMPLOYER.

## SECTION III - APPROVALS

| NAME/TITLE | SIGNATURE | DATE | APPROVE | DISAPPROVE (Attach Reason(s)) |
|---|---|---|---|---|
| (Employee's Supervisor) | | | | |
| (Personnel Officer/Designee) | | | | |
| (Appointing Officer/Designee) | | | | |

3670A CSC 7-20 (1-91)     **READ REVERSE SIDE**     PE-1448-R



# PUBLIC UTILITIES COMMISSION
## CITY AND COUNTY OF SAN FRANCISCO

FRANK M. JORDAN, *MAYOR*

ANSON B. MORAN, *ACTING GENERAL MANAGER*

ANDREA R. GOURDINE, *Manager*
*Bureau of Personnel & Training*

SAN FRANCISCO
MUNICIPAL RAILWAY

SAN FRANCISCO
WATER DEPARTMENT

HETCH HETCHY
WATER AND POWER

## REQUEST FOR ASSAULT PAY FOR PUBLIC UTILITIES' EMPLOYEE

Name     ROMAN SUNDAY

Class Number & Title      TRANSIT OPERATOR 9163

Division    WOODS                        Date of Assault    8-6-94

Location of Assault     3rd & PALOU ST.


Time lost from Work: from ___ 8-6-94 ___ to ___ PRESENT ___

Supervisor's Recommendation: Approve ☐ Disapprove ☒

Date _8-19-94_ signature _Manny Gonzales_

Comments: _DOES NOT APPEAR TO CONSTITUTE AN ASSAULT_


Appointing Officer's Recommendation: Approve ☐ Disapprove ☐

Date _8-22-94_  Signature _Ann Court & Mr_

Comments: _Employee was injured as a result of_
_passenger's assault with a bottle._

Forwarded to Civil Service Commission with supporting documentation
on: date _____ by _____

--------------------------------------------------------------

INSTRUCTIONS: The employee fills out the request and submits this
form to his/her supervisor. The supervisor forwards his/her
recommendation and documentation to PUC Personnel Department. The
Personnel Department forwards the Appointing Officer's
recommendation and documentation to the Civil Service Commission.

--------------------------------------------------------------

CSC ACTION: APPROVE ☐ DISAPPROVE ☐ DATE: _____

cc: Employee     Supervisor     Personnel     Payroll     File

ADMINISTRATION & TRAINING · 1155 MARKET ST., 8TH FLOOR, SAN FRANCISCO, CA 94103  (415) 554-1600
EXAMINATIONS · 646 VAN NESS, SAN FRANCISCO, CA 94102  (415) 554-3713

PE-778

PLEASE TYPE ALL INFORMATION, IF POSSIBLE

| State of California | Please complete in triplicate. Retain one copy for your files and mail the original and one copy to | OSHA Case or File No. |
|---|---|---|
| **EMPLOYER'S REPORT** | **CITY AND COUNTY OF SAN FRANCISCO COMPENSATION DIVISION** | |
| **OF OCCUPATIONAL** | 1155 MARKET, SAN FRANCISCO, CA. 94103   PHONE (415) 554-1777 | |
| | **PERMISSIBLY UNINSURED - LOCAL GOVERNMENT** | |
| **INJURY OR ILLNESS** | COMPLETE ONLY FOR A NEW INJURY/ILLNESS NOT FOR RECURRENCE | |
| FORM - 2 | DEPT.: __D.P.T.__    DIVISION: __WOODS__ | |
| | (AT TIME OF INJURY) | |

PICA ☐☐☐ ELITE ☐☐☐ ◄———— TYPEWRITER ALIGNMENT GUIDE ————► PICA ☐☐☐ ELITE ☐☐

California law requires an employer to report **within five days** every industrial injury or occupational disease which: (a) Results in lost time beyond the day of injury, or (b) requires medical treatment other than first aid. **PLEASE NOTE:** In addition, if death results or if the injury or illness: (a) Requires hospitalization for more than 24 hours for other than medical observation; or (b) results in loss of any member of the body; or (c) produces any serious degree of permanent disfigurement, then the nearest district office of the California Division of Occupational Safety and Health also must be notified **immediately** by telephone or telegraph. This notification is not required, however, if the injury or death results from an accident on a public street or highway.

**EMPLOYER**

1. FIRM NAME
City and County of San Francisco

1. SUPERVISOR
J. CHRISTIAN

2. MAILING ADDRESS    (Number and Street, City, ZIP)
1001-22nd ST. SAN FRANCISCO, CA 94107

2A. PHONE NUMBER
695-7164

3. LOCATION, IF DIFFERENT FROM MAIL ADDRESS    (Number and Street, City, ZIP)

3A. LOCATION CODE

4A. NATURE OF BUSINESS e.g., painting contractor, wholesale grocer, sawmill, hotel, etc.
TRANSIT

5. STATE UNEMPLOYMENT INSURANCE ACCT. NO.
932-0081

4B. TYPE OF EMPLOYER:    PRIVATE    STATE    CITY **XX**    SCHOOL DISTRICT    OTHER GOVERNMENT - SPECIFY

**EMPLOYEE**

6. EMPLOYEE NAME
ROMAN SUNDAY

7. DATE OF BIRTH (MM-DD-YY)
2-22-45

8. HOME ADDRESS    (Number and Street, City, ZIP)
923 DIVISADERO ST. SAN FRANCISCO, CA 94117

8A. PHONE NUMBER
637-1304

9. SEX    Male **X**    Female

10. OCCUPATION (Regular job title, not specific activity at time of injury)
TRANSIT

11. SOCIAL SECURITY NUMBER
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

12. DEPARTMENT IN WHICH REGULARLY EMPLOYED
S.F. MUNICIPAL RAILWAY

12A. DATE OF HIRE (MM-DD-YY)
10-10-80

13. HOURS USUALLY WORKED: HOURS PER DAY
8

13A. DAYS PER WEEK
5

13B. TOTAL WEEKLY HOURS
40

13C. POLICE REPORT FILED?

14. GROSS WAGES/SALARY
$ 17:98

PER:    HOUR **X**    DAY    WEEK    TWO WEEKS    MONTH    OTHER - SPECIFY

15. WHERE DID ACCIDENT OR EXPOSURE OCCUR?    (Number and Street, City)
3rd & PALOU ST.

15A. COUNTY
S.F.

15B. ON EMPLOYER'S PREMISES?    YES **X**    NO

**INJURY OR ILLNESS**

16. WHAT WAS EMPLOYEE DOING WHEN INJURED? (Please be specific. Identify tools, equipment or material the employee was using.)
DRIVING COACH.

17. HOW DID THE ACCIDENT OR EXPOSURE OCCUR? (Please describe fully the events that resulted in injury or occupational disease. Tell what happened and how it happened. Please use a separate sheet if necessary.)
A YOUNG BLACK MALE BROKE A BOTTLE ON FAREBOX, REACHING FOR TRANSFERS GLASS CAUSE INJURY TO MY RIGHT EYE.

18. OBJECT OR SUBSTANCE THAT DIRECTLY INJURED EMPLOYEE e.g., the machine employee struck against or which struck him; the vapor or poison inhaled or swallowed; the chemical that irritated his skin; in cases of strains, the thing he was lifting, pulling, etc.
BOTTLE. (GLASS)

19A. DESCRIBE THE INJURY OR ILLNESS e.g., cut, strain, fracture, skin rash, etc.
REDNESS

19B. PART OF BODY AFFECTED e.g., back, left wrist, right eye, etc.
EYE.

20. NAME AND ADDRESS OF PHYSICIAN    (Number and Street, City, ZIP)
FTR 1150 BUSH ST. SAN FRANCISCO, CA

21. IF HOSPITALIZED, NAME AND ADDRESS OF HOSPITAL    (Number and Street, City, ZIP)

22. DATE OF INJURY OR ILLNESS (MM-DD-YY)
8-6-94

23. TIME OF DAY    a.m.    p.m.
1250    **XX**

24. Did employee lose at least one full day's work after the injury?
NO **X**    YES - Date Last Worked: (MM-DD-YY) 8-6-94

25. HAS EMPLOYEE RETURNED TO WORK?    (MM-DD-YY)
**X** No, still off work    Yes, date returned:

26. DID EMPLOYEE DIE?
**X** NO    YES - Date of Death (MM-DD-YY)

27. Witnesses - give names and address:

| Completed by (type or print) | Signature | Title | Date |
|---|---|---|---|
| V. CROWDER | | DIV. MGR. | 8-9-94 |

PLEASE DO NOT USE THIS COLUMN

CASE NO.

OWNERSHIP

INDUSTRY

OCCUPATION

SEX

AGE

DAILY HOURS

DAYS PER WEEK

WEEKLY HOURS

WEEKLY WAGE

COUNTY

NATURE OF INJURY

PART OF BODY

SOURCE

ACCIDENT TYPE

A.O.S.

EXTENT OF INJURY

CODED BY

# ᴍᴜɴɪ OPERATOR ASSAULT REPORT

THIS REPORT TO BE FILLED OUT WHEN AN OPERATOR IS PHYSICALLY ASSAULTED, WHETHER INJURED OR NOT

LOCATION: 3ʳᵈ St. Palo          RUN: 167          LINE: 54

DIRECTION: INBOUND    North          TIME: 11:50 A

NAME: SUNDAY, ROMAN          CAP #: 2187

DIVISION: WOODS          COACH OR CAR #: 4576

HOME ADDRESS: 623 DiViSADEro    SAN FRANCISCO, CA. 94117

DATE OF INJURY: 8-6-94          DATE OF OCCURRENCE: 8-6-94

I.  1. Were you injured?                                          YES ☒  NO__
    2. If injured, was medical treatment received?               YES ☒  NO__
    3. Where was medical treatment received?              FTR
    4. Was an ambulance called?                                  YES ☒  NO__
    5. Were you hospitalized?                                    YES __  NO ☒

II. 1. Was there a radio on your coach or car?                   YES ☒  NO__
       a. Was the radio operational?                             YES ☒  NO__
    2. Was Central Control notified?                             YES ☒  NO__
    3. Was an Inspector at scene?                                YES ☒  NO__
    4. Were the Police at scene?                                 YES ☒  NO__
       a. Star#_____   Case # 941 066478
       b. Unit #_____
       c. Did the police take a report from you at that time?    YES ☒  NO__
          (Police report must be filed within 24 hours)

III. DESCRIPTION OF ASSAILANT:

MALE: ☒  FEMALE: ____    HEIGHT: 6 2'  WEIGHT: 180 lb  COLOR HAIR: Brn

COLOR EYES: Brn    WHITE: ___  HISPANIC: ___  BLACK: ☒  ORIENTAL:_____

OTHER:_____
Name and Address if known:_____

    1. Was the assailant apprehended?                           YES ___  NO ☒
    2. Have you seen assailant before?                          YES ___  NO ☒
         On this line?                                          YES ___  NO ☒
         On other lines?                                        YES ___  NO ☒
         Other?                                                 YES ___  NO ☒
       (If yes, explain:_____

    3. Was the assailant known to any witness?                  YES ___  NO ☒
       (If yes, give name and address:_____
    4. Could you recognize the assailant if you see him again?  YES ☒  NO___
    5. Was assailant also injured?                              YES ___  NO ☒
    6. Did assailant go in ambulance?                           YES ___  NO ☒

D-576

IV. 1. Was the coach in motion when you were assaulted?    YES___ NO _X_
   (If yes, was any damage sustained as a result of the assault?)    YES___ NO___

2. Was any other passenger on board injured as a result of the
   assault?    YES___ NO _X_

   a. Was the passenger on board injured as a result of physical
      contact?    YES___ NO _X_
   b. Was the passenger injured by the movement of coach?    YES___ NO _X_
      (e.g: coach striking object, sudden braking, etc.)

   *PASSENGER ATTEMPTED*
   *TO STEAL TRANSFER*

V. 1. What situation preceeded the assault? _Nothing_
2. Was assault a result of a fare or transfer dispute? _Yes (Transfer)_
3. Did the assailant appear to be under the influence of drugs
   or alcohol? _Yes alcohol_

VI. OPERATOR'S STATEMENT:

A young black male broke a soda bottle
on the fare box and some of the glass
got into my right Eye. Causeing right
EYE To swoll and hit and not able to see
clearly out of the right EYE.

VII. WITNESSES: Name & Address

1. _NONE_

2. _____

3. _____

OPERATOR SIGNATURE: _Roman Sunday_

DISPATCHER SIGNATURE: _____

DATE RECEIVED: _8/6/94_

**M U N I**

## PUBLIC UTILITIES COMMISSION
### BUREAU OF SAFETY

### Accident & Injury Investigation Report

**Employee Information**

| 1. Division | 2. Location of Accident |
|---|---|
| WOODS | 3rd & PALOU ST. |

**3. Name and Address of Injured**
ROMAN SUNDAY 923 DIVISADERO ST. SAN FRANCISCO, CA 94117 | **4. Age** 49 | **5. Sex** (X)M ( )F

**6. Occupation**
TRANSIT OPERATOR 9163

**7. Supervisor**
MR. JAMES CHRISTIAN

**8. Date of Accident**
8 /6 / 94

**9. Time of Accident**
1250 A.M.    P.M.

**10. Place Where Accident Occurred**
SAME AS #2

**11. Witnesses to Accident**

**12. Injured Employee's Description of Accident** A YOUNG BLACK MALE BROKE A BOTTLE ON FAREBOX CAUSING SOME GLASS TO GET IN MY RIGHT EYE. (RIGHT EYE SWOLLEN)

**First Aid Report**

**Nature and Extent of Injuries**
RIGHT EYE.

**First Aid Treatment**                    Date_____    Time____

Administered By:                Title:

(X) Sent Home          ( ) Taken to Dr._____          Date 8 / 6 /94
( ) Returned to Work   (X) Taken to    FTR    Hospital   Time 200am
                       Address_____                A.M. / P.M.
Did Employee Lose Time? (x)Yes( )No If yes, Date Lost Time Started_____

**Supervisor's Investigation**

What Job Was Employee Performing?

How Did the Accident Occur?

Why Did the Accident Occur? State Causes

What Actions Have Been or are Being Taken to Prevent Recurrence?

Original To:  E. Boldridge, Claims

Copy To:    Employee's Supervisor & Personnel

Report Prepared By: V. CROWDER          Title    9163          Date 8/ 6 /94

### (Use Back for Additional Information)



SF-502

# NATHAN HARE, Ph. D.

*Clinical Psychologist*

Cathedral Hill Medical Center Building -- 1801 Bush Street, Suite 118  S.F., CA 94109

Telephone/Fax: (415) 929-0204

Hours by Appointment Only

08-06-94

Ed Jones/Kathy Gilbert
MUNI
949 Presidio Ave
San Francisco,California 94115

RE: Roman Sunday
    Cap #2187

          This is to verify that Roman Sunday has been in treatment here in recent years and was off-work for some months in 1993, at which time he was diagnosed Anxiety Disorder NOS (DSMIII-R-300.00, with Psychological Factors Affecting Physical Condition (316.00). He would occasionally miss his appointments then drop by to wait until I might work him in if possible on an urgency.  He was receiving treatment for his physical injury, including neck and back injuries, by Drs. Oscar Jackson,M.D.,   T. Banks, Ernest Bates among others,and has been on a variety of medications.

          Mr. Sunday returned to work on 01-14-94. In July, he entered the Employee Assistance Program for alcohol abuse and family problems.   When he was experiencing panic attacks from early May to the end of July, he visited this facility on a number of occasions, the most recent being July 25th and August 2nd.

          Roman Sunday has experienced repeated assaults while driving the bus in recent years, resulting in severe psychological residuals as well as significant physical damage by medical records and history. He experiences periodic bouts of anxiety, including panic attacks and symptoms of post-traumatic stress, forgetfulness and psychological sequelae to chronic pain. It is my clinical judgment, by clinical observation and mental status examination that his periodic inability to function and focus clearly would be consistent with his diagnosis. It is recommended that he resume the psychotherapy shortcircuited upon his return to work about a year ago.

          Please contact me if you have further questions.

Sincerely,

*Nathan Hare*

Nathan Hare, Ph.D
Licensed psychologist, clinical
#PSY5202

**City and County of San Francisco**

## Request for Leave

*(Read reverse side for important information on leaves prior to completing form)*

## SECTION I - EMPLOYEE MUST COMPLETE.
NEW _____ RENEWAL _____

Name _SUNDAY, Roman_ Social Security No. _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_ Telephone No. _(415) 637-1304_

Address _923 Divisadero_ City _S.F._ State _CA_ ZipCode _94115_

Department _WOODS_ Class No. & Title _TRANSIT OPERATOR 9163_

Employment Status: *(Check one)*
Permanent ☒  Probationary ☐  Temporary ☐  Provisional ☐  Exempt ☐

Date of Leave:  From _8-6-94_  Through _____ Inclusive

Type of Leave Requested: *(Check one below)*

☐  Sick leave with pay  ☒  Sick leave without pay
   ☐  Check if you will be receiving State Disability Insurance and wish to supplement
      with Sick Leave, Vacation or Compensatory Time credits *(Read Note 4 on reverse side)*
   ☐  Check if you will be receiving State Disability Insurance and DO NOT wish to supplement
      with sick leave, vacation or compensatory time credits *(Read Note 4 on reverse side)*

☐  Military Leave *(copy of orders attached)*
☐  Educational Leave *(for permanent employees only)*
☐  Family Care Leave *(for permanent employees only)*
☐  Personal Leave *(See Reverse Side)*
☐  To Accept Other City and County Employment *(for permanent employees only)*

   Department: _WOODS_ Class No. & Title _9163_

☐  Other: *(Specify)* _____

Signature _X Roman Sunday_ Date _10-3-94_

## SECTION II - HEALTH CARE PROVIDER MUST COMPLETE  *(Read Notes 2 & 3 on reverse side)*

I, the undersigned health care provider, do hereby certify that the above-named employee is incapacitated for the performance of required duties for the reasons and time period indicated below. In signing this form, I understand and agree to answer in a timely fashion employer's reasonable questions as to the basis of the statements made on this form. I understand that my cooperation is necessary to secure employer's approval of sick leave.

Nature of Illness _Anxiety Disorder NOs (300.00). r.o. Post-traumatic stress disorder (309.89)_

Date of leave: From _08-06-94_ Through _10-03-94_ Inclusive *(See Note 3 on Reverse)*

Health Care Provider: (Print Name) _Nathan Hare, PH.D._ License No. _PSY5202_

Address _1801 Bush sT, #118_ City _San Franci_ State _CAlif._ ZipCode _94109_

Signature _Nathan Hare, Ph.D / Roman Sunday_ Date _09-03-94_ Telephone _(415) 929-02_

**RETURN TO PATIENT WHO IS RESPONSIBLE FOR FORWARDING TO THE EMPLOYER.**

## SECTION III - APPROVALS

| NAME/TITLE | SIGNATURE | DATE | APPROVE | DISAPPROVE (Attach Reason(s)) |
|---|---|---|---|---|
| (Employee's Supervisor) | | | | |
| (Personnel Officer/Designee) | | | | |
| (Appointing Officer/Designee) | | | | |

PE-1448-R

3670A CSC 7-20 (1-91)  **READ REVERSE SIDE**

```
 947713                     STATUS:
  UNDAY, ROMAN
   ROV/NAME        FROM        TH
  - - - - - - - - - - - - - - - - - - - - - - - -

 ~RY DISABILITY   08/10/94
    ^4  (IND      ^^^.00 `           DATE:  SEP 09 1994
```

ROMAN SUNDAY                      CCSF/PUC - MUNI RAILWAY
923 DIVISIDERO                    File No.: 947713
SAN FRANCISCO, CA. 94115         DOI: 08/06/94
                                  FDO:
                                  SSN: 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

DEAR Mr. SUNDAY:

The check sent under separate cover is your final payment of temporary disability benefits. These payment are ending because
DR SHEARN RELEASED YOU TO RETURN TO WORK ON AUGUST 20 , 1994.

Our records show you've received $    406.00 in temporary disability benefits
from 08/10/94 through 08/19/94* and $    000.00 in penalties. A record
of these payments is attached. If you get any medical bills, please send
them to me.*Broken periods

While temporary disability benefits are ending, you may be entitled to other
workers' compensation benefits described in the pamphlet sent to you after
your injury.

The state requires I include the following advice to you:

   'Please call me if you have questions. If you want further
   information, you may contact the local state Information and
   Assistance office by calling (800) 736-7401 or you may
   receive recorded information by calling 1-800-736-7401.

   You may also consult an attorney of your choice or apply to
   the Workers' Compensation Appeals Board. Should you decide
   to be represented by an attorney, you may or may not receive
   a larger award, but, unless you are determined to be
   ineligible for an award, the attorney's fee will be deducted
   from any award you receive for disability benefits. The
   decision to be represented by an attorney is yours to make,
   but it is voluntary and may not be necessary for you to
   receive your benefits.'

Again, if you have any questions or if you would like to discuss your claim,
please call me at (415) 247-0900.

Sincerely,

CHANDLER WHITE/EXT 7013
CLAIMS EXAMINER

        CC:   FILE
              BING CHU


DWC-B1

THE ACMI - Noetics Division

595 Market Street
Suite 1800
San Francisco, Ca. 94105
(415) 247-0900

DATE:   SEP 09 1994

ROMAN SUNDAY
923 DIVISIDERO
SAN FRANCISCO, CA. 94115

CCSF/PUC - MUNI RAILWAY
File No.: 947713
DOI: 08/06/94
FDO:
SSN: 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

DEAR Mr. SUNDAY:

Your doctor says you've fully recovered from the injury without any
limitations. Since there's no permanent disability, I plan to close
your file. Even though there'll be no further disability payments, you're
still covered for the cost of medical treatment for your injury.
If you get any medical bills, please send them to me.

We agree with the doctor's opinion. If you disagree, you can be examined
by a doctor selected from a panel provided by the State. Enclosed is a
form to ask the State agency to provide you with a three-doctor panel.

The state requires I include the following advice to you:

'Please call me if you have questions. If you want further
information, you may contact the local state Information and
Assistance office by calling (800) 736-7401 or you may
receive recorded information by calling 1-800-736-7401.

You may also consult an attorney of your choice or apply to
the Workers' Compensation Appeals Board. Should you decide
to be represented by an attorney, you may or may not receive
a larger award, but, unless you are determined to be
ineligible for an award, the attorney's fee will be deducted
from any award you receive for disability benefits. The
decision to be represented by an attorney is yours to make,
but it is voluntary and may not be necessary for you to
receive your benefits.'

Again, if you have questions, please call me.

Sincerely,

CHANDLER WHITE/EXT 7013
CLAIMS EXAMINER

CC:   FILE

Roman Sunday

8-6-94. Attacked on bus again & last night on rt 6
& Broke the bottle on it fore top & drew glass in jar. Some
got in eye. Had sued to motel & transfer & took me to St Francis
Frestman Room. Meds & go bed monday. Painted & sweating
and parked bus and came over here to see me & Didn't know
& I called to set up an appointment & Today.



**KAISER PERMANENTE**

Date _7/19/04_

Dear _Ronald Sumar_

MR # _3200383_

The tests ordered by me have been reported as follows:

☐ Blood
☐ Urine
☐ EKG          Cholesterol 160
☐ X-Ray        all other tests normal
☐ Other

*I want to inform you*

Sincerely,

Any questions call me at 202- _3280_

06023 (REV. 8-92)

---

# Employee Assistance Program

**City and County of San Francisco**
**Department of Public Health**

E A P

A P P O I N T M E N T

FOR: _Romain Sundy_

DATE: _7/25 Mars_  TIME: _1:00_

WHOM TO SEE: _Alex_

\* If you cannot make it, please call 554-9580.



**City and County of San Francisco**

# Request for Leave

*(Read reverse side for important information on leaves prior to completing form)*

## SECTION I - EMPLOYEE MUST COMPLETE.     NEW _____     RENEWAL _X_

Name _ROMAN SUNDAY_ _____ Social Security No. _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_ Telephone No. _(415) 637-1304_

Address _240 N. Bayshore Blvd #321_ City _SAN MATEO_ ___ State _CA._ ZipCode _94401_

Department _WOODS MUNI_ _____ Class No. & Title _9163 Transit Operator_

Employment Status: *(Check one)*
Permanent ☒     Probationary ☐     Temporary ☐     Provisional ☐     Exempt ☐

Date of Leave:  From  _09-23-92_     Through  _09-23-93_  Inclusive

Type of Leave Requested: *(Check one below)*

☒ Sick leave with pay     ☐ Sick leave without pay
  ☒ Check if you will be receiving State Disability Insurance and wish to supplement
    with Sick Leave, Vacation or Compensatory Time credits *(Read Note 4 on reverse side)*
  ☐ Check if you will be receiving State Disability Insurance and **DO NOT** wish to supplement
    with sick leave, vacation or compensatory time credits *(Read Note 4 on reverse side)*
☐ Military Leave *(copy of orders attached)*
☐ Educational Leave *(for permanent employees only)*
☐ Family Care Leave *(for permanent employees only)*
☐ Personal Leave *(See Reverse Side)*
☐ To Accept Other City and County Employment *(for permanent employees only)*

  Department: _WOODS_ _____ Class No. & Title _9163 Transit Operator_

☒ Other: (Specify) _MEDICAL (ASSOULTED) MEDICAL LEAVE_

Signature _Roman Sunday_ _____ Date _9-24-92_

## SECTION II - HEALTH CARE PROVIDER MUST COMPLETE   *(Read Notes 2 & 3 on reverse side)*

I, the undersigned health care provider, do hereby certify that the above-named employee is incapacitated for the performance of required duties for the reasons and time period indicated below. In signing this form, I understand and agree to answer in a timely fashion employer's reasonable questions as to the basis of the statements made on this form. I understand that my cooperation is necessary to secure employer's approval of sick leave.

Nature of Illness  Anxiety disorder NOS (DSMIII-R-300.00). Psychological Physical Condition (316.00)

Date of leave: From _09-23-92_  Through _09-23-93_  Inclusive  *(See Note 3 on Reverse)*

Health Care Provider: (Print Name) ___ Nathan Hare, Ph.D. ___ License No. #PSY5202

Address ___ 1801 Bush Street, #118 ___ City San Francisco State Calif. ZipCode 94109

Signature _Nathan Hare_ ___ Date 09-29-92 ___ Telephone (415) 929-0204

**RETURN TO PATIENT WHO IS RESPONSIBLE FOR FORWARDING TO THE EMPLOYER.**

## SECTION III - APPROVALS

| NAME/TITLE | SIGNATURE | DATE | APPROVE | DISAPPROVE (Attach Reason(s)) |
|---|---|---|---|---|
| (Employee's Supervisor) | | | | |
| (Personnel Officer/Designee) | | | | |
| (Appointing Officer/Designee) | | | | |

3670A CSC 7-20 (1-91)                    **READ REVERSE SIDE**                    PE-1448-R

OSCAR J. JACKSON, M. D.
1342 HAIGHT STREET
SAN FRANCISCO, CALIFORNIA 94117
TELEPHONE: 552-0916
552-0917

Date: _8 — 12 -93_

To Whom It May Concern:

This patient _Roman Sindry_ _Behind_

has been under my care from _8-12-93_ to _____

and is able to return to work/school on _9-15-93_

Limitations/Remarks: _____

_Industrial Injury_

_____

If there are any further questions please feel free to contact
this office at the above numbers.

Very truly yours,

Oscar J. Jackson, M.D., F.A.C.S.

MAILING ADDRESS: P.O. BOX 170039, San Francisco, CA 94117

# PROFESSIONAL PROGRESS NOTES—REVISED

Name _Roman Sunday_ Date _9-21-93_

Session # _____ Date of Last Visit _____

Office ❑  Hospital ❑  Other ❑ _____

Others Present _____

| | Kept ❑ | 15 min ❑ | Routine ❑ |
|---|---|---|---|
| | Canc ❑ | 30 min ❑ | Emerg ❑ |
| | Resch ❑ | 60 min ❑ | Billing Date |
| | Failed ❑ | 90 min ❑ | Billed $ |
| | Late ❑ | Other ❑ | Paid $ |

**Content:**
❑ Important recent events
❑ Changed complaints
❑ Historical data
❑ Family dynamics
❑ Images/metaphors/dreams
❑ Transference/countertransference

_Eye doctor. ... Wells orth Care ... 2 ... pillow ..._

**Interventions:**
❑ Interpretations/insights
❑ Homework
❑ Tx plans/goals/recommendations

❶ **Level of functioning**
  unchanged/better/worse

❷ **Stressors**
  unchanged/better/worse

❸ **Motivation**
  low/moderate/high

❹ **Insight**
  poor/limited/fair/good

❺ **Judgment**
  poor/limited/fair/good

❻ **Diagnosis**
  changed/additional

Details Regarding:  ❶ Level of functioning  ❷ Stressors  ❸ Motivation  ❹ Insight  ❺ Judgment  ❻ Diagnosis

**Special concerns:***  Suicide/violence ❑    Psychiat/Neuro ❑    Health status ❑    Sexual allegation precautions ❑
*Enter details on reverse side.

**Post-visit reminders/Discuss next visit:**

_Report to Mother Group ... Jennifer Glee ... Mary Goldstein ... 247-701_

**Next visit:**
❑ Standing appt.
❑ Scheduled for _____
❑ Tx. terminated*
❑ Client will call
❑ No appts. available
❑ Therapist will call client
  by _____
*Enter details on reverse side.

**PAR** Psychological Assessment Resources, Inc.
P.O. Box 998/Odessa, Florida 33556/Toll-free 1-800-331-TEST

Signed _____ Date _____

Copyright 1987, 1989, 1993 by Psychological Assessment Resources, Inc. All rights reserved. May not be reproduced in whole or in part in any form or by any means without written permission of Psychological Assessment Resources, Inc.    Reorder #RO-1571    Printed in the U.S.A.    1 2 3 4 5 6 7 8 9

# BDI

Date: _____

Name: *Roman Sunday*     Marital Status: *No*    Age: *4 8*   Sex: *M*

Occupation: *TRANSIT OPERATOR*     Education: *College 2nd YEAR*

This questionnaire consists of 21 groups of statements. After reading each group of statements carefully, circle the number (0, 1, 2 or 3) next to the one statement in each group which **best** describes the way you have been feeling the **past week, including today.** If several statements within a group seem to apply equally well, circle each one. **Be sure to read all the statements in each group before making your choice.**

**1**
- 0   I do not feel sad.
- 1   I feel sad.
- 2   I am sad all the time and I can't snap out of it.
- 3   I am so sad or unhappy that I can't stand it.

**2**
- 0   I am not particularly discouraged about the future.
- 1   I feel discouraged about the future.
- 2   I feel I have nothing to look forward to.
- 3   I feel that the future is hopeless and that things cannot improve.

**3**
- 0   I do not feel like a failure.
- 1   I feel I have failed more than the average person.
- 2   As I look back on my life, all I can see is a lot of failures.
- (3)   I feel I am a complete failure as a person.

**4**
- 0   I get as much satisfaction out of things as I used to.
- 1   I don't enjoy things the way I used to.
- 2   I don't get real satisfaction out of anything anymore.
- 3   I am dissatisfied or bored with everything.

**5**
- (0)   I don't feel particularly guilty.
- 1   I feel guilty a good part of the time.
- 2   I feel quite guilty most of the time.
- 3   I feel guilty all of the time.

**6**
- 0   I don't feel I am being punished.
- 1   I feel I may be punished.
- 2   I expect to be punished.
- (3)   I feel I am being punished.

**7**
- 0   I don't feel disappointed in myself.
- 1   I am disappointed in myself.
- 2   I am disgusted with myself.
- (3)   I hate myself.

**8**
- 0   I don't feel I am any worse than anybody else.
- 1   I am critical of myself for my weaknesses or mistakes.
- 2   I blame myself all the time for my faults.
- (3)   I blame myself for everything bad that happens.

**9**
- 0   I don't have any thoughts of killing myself.
- 1   I have thoughts of killing myself, but I would not carry them out.
- 2   I would like to kill myself.
- (3)   I would kill myself if I had the chance.

**10**
- 0   I don't cry any more than usual.
- 1   I cry more now than I used to.
- 2   I cry all the time now.
- 3   I used to be able to cry, but now I can't cry even though I want to.

**11**
- 0   I am no more irritated now than I ever am.
- 1   I get annoyed or irritated more easily than I used to.
- (2)   I feel irritated all the time now.
- 3   I don't get irritated at all by the things that used to irritate me.

**12**
- 0   I have not lost interest in other people.
- 1   I am less interested in other people than I used to be.
- 2   I have lost most of my interest in other people.
- 3   I have lost all of my interest in other people.

**13**
- 0   I make decisions about as well as I ever could.
- 1   I put off making decisions more than I used to.
- 2   I have greater difficulty in making decisions than before.
- (3)   I can't make decisions at all anymore.

_____ Subtotal Page 1        **CONTINUED ON BACK**

THE PSYCHOLOGICAL CORPORATION®
HARCOURT BRACE JOVANOVICH, INC.

Copyright © 1978 by Aaron T. Beck. All rights reserved. Printed in the U.S.A.

*BDI* is a trademark of The Psychological Corporation.

NOTICE: It is against the law to photocopy or otherwise reproduce this questionnaire without the publisher's written permission.

9-018359

**14**
- 0   I don't feel I look any worse than I used to.
- 1   I am worried that I am looking old or unattractive.
- 2   I feel that there are permanent changes in my appearance that make me look unattractive.
- (3)   I believe that I look ugly.

**15**
- 0   I can work about as well as before.
- 1   It takes an extra effort to get started at doing something.
- 2   I have to push myself very hard to do anything.
- (3)   I can't do any work at all.

**16**
- 0   I can sleep as well as usual.
- 1   I don't sleep as well as I used to.
- 2   I wake up 1-2 hours earlier than usual and find it hard to get back to sleep.
- (3)   I wake up several hours earlier than I used to and cannot get back to sleep.

**17**
- 0   I don't get more tired than usual.
- 1   I get tired more easily than I used to.
- 2   I get tired from doing almost anything.
- (3)   I am too tired to do anything.

**18**
- 0   My appetite is no worse than usual.
- 1   My appetite is not as good as it used to be.
- 2   My appetite is much worse now.
- (3)   I have no appetite at all anymore.

**19**
- 0   I haven't lost much weight, if any, lately.
- 1   I have lost more than 5 pounds.
- (2)   I have lost more than 10 pounds.
- (3)   I have lost more than 15 pounds.

  I am purposely trying to lose weight by eating less. Yes _____ No _____

**20**
- 0   I am no more worried about my health than usual.
- 1   I am worried about physical problems such as aches and pains; or upset stomach; or constipation.
- 2   I am very worried about physical problems and it's hard to think of much else.
- (3)   I am so worried about my physical problems that I cannot think about anything else.

**21**
- 0   I have not noticed any recent change in my interest in sex.
- 1   I am less interested in sex than I used to be.
- 2   I am much less interested in sex now.
- (3)   I have lost interest in sex completely.

_____ Subtotal Page 2

_____ Subtotal Page 1

_____ Total Score



**NAME** *Roman Sundru*                    **DATE** *7-2--3*

Below is a list of common symptoms of anxiety. Please carefully read each item in the list. Indicate how much you have been bothered by each symptom during the PAST WEEK, INCLUDING TODAY, by placing an X in the corresponding space in the column next to each symptom.

| | NOT AT ALL | MILDLY It did not bother me much. | MODERATELY It was very unpleasant, but I could stand it. | SEVERELY I could barely stand it. |
|---|---|---|---|---|
| 1. Numbness or tingling. | | | X | |
| 2. Feeling hot. | | | X | |
| 3. Wobbliness in legs. | | | X | |
| 4. Unable to relax. | | | X | |
| 5. Fear of the worst happening. | | | | X |
| 6. Dizzy or lightheaded. | | | | X |
| 7. Heart pounding or racing. | | | X | |
| 8. Unsteady. | | | X | |
| 9. Terrified. | | | X | |
| 10. Nervous. | | | X | |
| 11. Feelings of choking. | | | X | |
| 12. Hands trembling. | | | X | |
| 13. Shaky. | | | X | |
| 14. Fear of losing control. | | | | X |
| 15. Difficulty breathing. | | | X | |
| 16. Fear of dying. | | | X | |
| 17. Scared. | | | X | |
| 18. Indigestion or discomfort in abdomen. | | | X | |
| 19. Faint. | | | X | |
| 20. Face flushed. | | | X | |
| 21. Sweating (not due to heat). | | | X | |

THE PSYCHOLOGICAL CORPORATION
HARCOURT BRACE JOVANOVICH, INC.

Copyright © 1990, 1987 by Aaron T. Beck. All rights reserved. No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording, or any information storage and retrieval system, without permission in writing from the publisher. Printed in the United States of America.
        10  11  12   A  B  C  D  E

09018425

PROGRESS NOTES        Name Roman Sunday

DATE        Sx/Dvxus        Meds    NOTES

2-27-03 NAPROSYN 500 mg 1 bid with meal, Dr. Fogelberg, MD

CYCLOBenzaprine 10 mg tid pm, Dr. Richey, MD

Ibuprofen, 800 mg tid with food, Dr. Richey, MD

Hypocodone Bitartrate, 5 mg/500 mg 0 amg to 6 qhs

Severe foot pains, knee pains, shoulder pain. Constant headaches, appears to pass out, + appetite for food, urge to eat, but food leaves. Can't eat a whole meal. Lost weight. + 7 lbs. can't sleep. Lucky to get a nap. Can't relax. Can't never get rate settled. + headache don't go away, sometimes on the left side, sometimes on right. Won't go away. Legs to move around. Case w/ medical callon, repects to sallery a stereotyped mark. Multiple pains. Head hit window made things worse from last time. Look like my job trying to kill me. Went back and tried to work for eight months can't. Ran red light and hit sms head on. My right knee got pinned. Head hit the window. Hurt neck & back. I start getting dizzy, don't even know if I pass out Can't remember too good. Never got over last time, get tiny hit on the head with a fist - job trying to kill me.

*PLS. FAX THE*
*RESULT TO*
*621-1414*
*ASAP !!!*

# CALIFORNIA PACIFIC MEDICAL CENTER
## *Pacific Campus*
**Eye Professional Services • Department of Ophthalmology**
2340 Clay Street, 5th Floor
San Francisco, CA 94115
415/923-3937  Fax: 415/885-8637

**CPMC**

## EYE PROFESSIONAL SERVICES REFERRAL FORM

Insur. Authorization # _____

Medical Record # _____ Study # _____

Today's date _____ 9/29/93 _____

M ☐

Patient ___ SUNDAY, RONAN _____  F ☐
(last)          (first)

DOB 2/22/4 Phone (work) _____ (home) 637-1304

APPOINTMENT DATE: 10 / 13 / 93 TIME: 8:45 A.

Referring Physician __ SCARLETTE M. WILSON, M.D.
45 CASTRO STREET, SUITE 315
SAN FRANCISCO, CALIF. 94114

Additional Report To: _____

Previous EPS Studies ☐ yes ☐ no  Date _____

Visual Acuity, Best Corrected OD __ 20/60 _____

OS __ 20/10 _____

Correction   OD _____

OS _____

Diagnosis — CONVERGENCE INSUFFICIENCY

History — GLUCOMA SUSPECT

_____

_____

**ANY HISTORY OF DILATION PROBLEMS?** ☐ yes ☐ no

Medications: _____

_____

Allergies/Contraindications _____

_____

*********************************** TESTS ************************************

### Photographic Studies

| | OD | OS |
|---|---|---|
| Fluorescein Angiography | ☐ | ☐ |
| ☐ OD only ☐ OS only ☐ OU, BEGIN STUDY IN: | ☐ | ☐ |
| Color Fundus (*Photos only*) | ☐ | ☐ |
| Disc Series | ☐ | ☐ |
| Red-Free | ☐ | ☐ |
| Nerve Fiber Layer | ☐ | ☐ |
| Iris Angiography (Includes Externals) | ☐ | ☐ |
| External Photography | ☐ | ☐ |
| | | |
| Motility Series | ☐ | ☐ |
| Contact Specular Photomicrography (include cell count) | ☐ | ☐ |
| Other | ☐ | ☐ |

### Perimetry

| | OD | OS |
|---|---|---|
| Automated Perimetry  FASTPAC: ☐ yes ☐ no | ☐ | ☐ |
| ☐ 30-2 ☐ 24-2 ☐ 10-2 ☐ Macular Threshold | | |
| Goldmann Perimetry, Standard | ☐ | ☐ |
| High Pass Perimetry | ☐ | ☐ |
| Other_____ | ☐ | ☐ |

### Axial Length Measurement/IOL Calculation

☐

A-constant _____

### Ultrasonography (B-scans)

| | OD | OS |
|---|---|---|
| ☐ Ocular | ☐ | ☐ |
| ☐ Orbital | ☐ | ☐ |

### Visual Physiology, Psychophysics

| | OD | OS |
|---|---|---|
| ☐ Color Vision Testing (FM-100) | ☐ | ☐ |
| ☐ Color Vision Testing (D-15) | ☐ | ☐ |
| ☐ Electrooculography (EOG) | ☐ | ☐ |
| ☐ Dark Adaption | ☐ | ☐ |
| ☐ Electroretinography (ERG) | ☐ | ☐ |
| ☐ **Visually Evoked Potential** | ☐ | ☐ |
| ☐ pattern ☐ flash | | |
| ☐ Visometry/Interferometry | ☐ | ☐ |
| ☐ Potential Acuity Meter | ☐ | ☐ |
| ☐ Blue-Field Entoptic | ☐ | ☐ |

### ADDITIONAL SCHEDULING INSTRUCTIONS
☐ Appt. to be scheduled        ☐ Patient will call
☐ Missed appointment           ☐ Reschedule
Rescheduled date/time _____

595 MARKET STREET, SUITE 1800
SAN FRANCISCO, CA. 94105

**THE NOETICS GROUP**

(415) 247-0900
FAX (415) 247-0910

DATE:          August 27, 1993

Oscar J. Jackson
1352 Haight Street
San Francisco, CA  94117

RE:    EMPLOYEE.        Roman Sunday
       DATE OF INJURY:  6-23-93
       CLAIM NUMBER:    937556

Dear Dr. Jackson:

The proper handling of this claim depends largely upon your answers to the questions listed below.  We
will appreciate your assistance in answering all the questions.  If more convenient for you, please send us
letter with the required medical data.

)    Diagnosis: 1) *Cervical spasm, lumbar spasm, spasm*
        *right shoulder, spasm Right knee, Contusion*

)    Present condition of original injury?  *scalp, Post traumatic syndrome (nervous*
        *Improved*                                    *blurred vision, headaches)*

)    Approximately what date may injured return to work?  *10-15-93*

)    Permanent disability? Yes___  No___  *Undetermined (may anticipated)*

    Subjective:

    Objective:

    Work Preclusions:

    Date of last examination:  *8-31-93*

    Further length of treatment:  *4 weeks ?*

        *Need Eye Consult (Dr Wilson)*

## PROGRESS NOTES

Name _Roman Sunday_

| DATE | NOTES |
|------|-------|

'0-5-93. Continues round of treatment with multiple medical
Pains and headaches. Head, neck & knees, sometimes ___
___ a lot of back pain. Vision worsened since ___
Sleeplessness & apprehensiveness. Situational avoidance.
Feelings of vulnerability. Memory difficulties



## Adult Response Sheet

Name _SUNDAY, ROMAN_ Sex _MALE_ Age _48_ Marital Status _NONE_
Place _SAN FRANCISCO, CA_ Date _6-24-93_

Complete these sentences to express *your real feelings*. Try to do every one.
Be sure to make a complete sentence.

1. I like _THE NEWS PAPERS_

2. The happiest time _When our girl and boy was born_

3. I want to know _about the U.S. 3 States_

4. Back home _it was not many white people_

5. I regret _Nothing_

6. At bedtime _i read a Book_

7. Men _Sometimes so hard work_

8. The best _thing is that i am living_

9. What annoys me _is white people_

10. People _who are white thing that they are wright_

11. A mother _is a special_

12. I feel _pain in my leas, Neck, right knee and my Chest_

13. My greatest fear _is white people_

14. In school _all my teacher were white_

15. I can't _work because of my body pain_

TURN PAGE OVER AND CONTINUE

 THE PSYCHOLOGICAL CORPORATION®
HARCOURT BRACE JOVANOVICH, INC.

Copyright © 1950 by The Psychological Corporation
Copyright renewed 1977 by The Psychological Corporation

All rights reserved. No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording, or any information storage and retrieval system, without permission in writing from the publisher.

*The Psychological Corporation* and the PSI logo are registered trademarks of The Psychological Corporation.

Printed in the United States of America.        1 2 3 4 5 6 7 8 9 10 11 12 A B C D E        09-685843

EXHIBIT B

NATHAN HARE, Ph.D., Ph.D.

*Clinical Psychologist Lic# PSY5202*

Cathedral Hill Professional Building — 1801 Bush Street, Suite 118, San Francisco, CA 94109

Ph. D., Psychology
Ph. D., Sociology

Telephone: (415) 929-0204
Fax: (415) 929-1677
e-mail: nhare@blackthinktank.com

03/29/2007

NOTE

These are personal and confidential medical records
C/O Roman Sunday.

*N H*

Exhibit B

CALJIC 2.27

# CALJIC 2.27

## SUFFICIENCY OF TESTIMONY OF ONE WITNESS

**You should give the [uncorroborated] testimony of a single witness whatever weight you think it deserves. Testimony by one witness which you believe concerning any fact [whose testimony about that fact does not require corroboration] is sufficient for the proof of that fact. You should carefully review all the evidence upon which the proof of that fact depends.**

### USE NOTE

This instruction should be given sua sponte in every criminal case. (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 884 [123 Cal.Rptr. 119, 133, 538 P.2d 247, 261]; *People v Pringle* (1986) 177 Cal.App.3d 785, 788–790 [223 Cal.Rptr. 214, 216–218].)

Use the first bracketed phrase if corroboration of a witness's testimony is required, such as in Penal Code section 1103a (perjury), 1108 (abortion or enticement for prostitution), 1111 (testimony of accomplice), and 653f (solicitation to commit felony). *People* v. *Stewart* (1983) 145 Cal.App.3d 967, 975 [193 Cal.Rptr. 799, 802] states it is "better practice" to use that phrase. *People v. Chavez* (1985) 39 Cal.3d 823, 831 [218 Cal.Rptr. 49, 54, 705 P.2d 372, 377] states that they agree with *People* v. *Stewart, supra,* 145 Cal.App.3d 967, 193 Cal.Rptr. 799 in this suggested addition where appropriate.

### COMMENT

3 Witkin, Cal. Evidence (3d ed. 1986) § 1750. As to sufficiency of evidence of one witness except where additional evidence is required by statute, see Evidence Code section 411.

There is a dispute in the case law as to whether CALJIC 10.60 need be given at all if CALJIC 2.27 is given. Compare *People v. Adams* (4th Dist., Div. 1, 1986) 186 Cal.App.3d 75, 75–80 [230 Cal.Rptr. 588, 588–590) (holding it need not be given) with *People*

pg 23   Ex. B

**2.27**    EVIDENCE AND GUIDES—CONSIDERATION    Part 2

v. *McIntyre* (4th Dist., Div. 1, 1981) 115 Cal.App.3d 899, 906–907 [176 Cal.Rptr. 3, 7], and *People* v. *Jamison* (4th Dist., Div.1, 1984) 150 Cal.App.3d 1167, 1172–1174 [198 Cal.Rptr. 407, 409–411] (approving the giving of both instructions).

*People* v. *Turner* (1990) 50 Cal.3d 668, 695–698 [268 Cal.Rptr. 706, 719–721, 789 P.2d 887, 900–902] cert. denied 498 U.S. 1053 [112 L.Ed.2d 787, 111 S.Ct. 768].

**Library References:**
C.J.S. Criminal Law § 1099–1102, 1335.
West's Key No. Digests, Criminal Law �köö553, 782(4, 10), 785(3, 10), 824(10).

78

Pg 24 Ex B

S152252

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ROMAN SUNDAY, SR., on Habeas Corpus

The petition for writ of habeas corpus is denied.  (See *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

SUPREME COURT
FILED

SEP 1 2 2007

Frederick K. Ohlrich Clerk

Deputy

**GEORGE**

Chief Justice

 Case 4:07-cv-05308-SBA   Document 1   Filed 10/18/2007   Page 102 of 102

CSP SOLANO STATE PRISON

UNITED STATES DISTRICT COURT / NORTHERN DISTRICT OF CALIFORNIA / OFFICE OF THE CLERK / 450 GOLDEN GATE AVE. / P.O. BOX 36060 / SAN FRANCISCO, CA. 94102

RECEIVED / OCT 12 2007 / RICHARD W. WIEKIN / CLERK US DISTRICT COURT / NORTHERN DISTRICT OF CALIF.

PRIORITY MAIL / UNITED STATES POSTAL SERVICE TM / WWW.USPS.GOV / LABEL 107R OCT 1998

ROMAN SUNDAY SR., V-11338 / CSP-SOL III, BLDG. 1-106L / P.O. BOX 4000 / VACAVILLE, CA. 95696-4000